**Vivian CALHOUN et al.,
Plaintiffs-Appellants,**

**Deborah Birt et al.,
Intervenors-Appellants,**

**Emma Armour et al.,
Intervenors-Appellants,**

v.

**Ed S. COOK et al.,
Defendants-Appellees.**

No. 74–2784.

United States Court of Appeals,
Fifth Circuit.

Oct. 23, 1975.
Rehearing and Rehearing En Banc
Denied Dec. 31, 1975.
See 525 F.2d 1203.

(b)(3) of this section (relating to incidental costs of travel and entertainment).

Elizabeth R. Rindskopf, New Haven, Conn., John R. Myer, Atlanta, Ga., Norman J. Chachkin, Jack Greenberg, James M. Nabrit, III, New York City, for Vivian Calhoun and others.

Margie Pitts Hames, Glenna L. Stone, Atlanta, Ga., for Emma Armour and others.

Warren C. Fortson, Prentiss Q. Yancey, Jr., Bruce H. Beerman, Atlanta, Ga., for defendants-appellees.

Before WISDOM, THORNBERRY and CLARK, Circuit Judges:

CLARK, Circuit Judge:

Since 1958 when this school desegregation suit was filed, the winds of legal effort have driven wave after wave of judicial rhetoric against the patrons of the Atlanta public school system. Today hindsight highlights the resulting erosion, revealing that every judicial design for achieving racial desegregation in this system has failed. A totally segregated system which contained 115,000 pupils in 1958 has mutated to a substantially segregated system serving only 80,000 students today. A system with a 70% white pupil majority when the litigation began has now become a district in which more than 85% of the students are black. Notwithstanding the lack of success in integrating these classrooms, our task is to test whether the plan approved for district operation realistically promises effective protection *now* for the right of the pupils to a nondiscriminatory education.

Almost predictably, changing circumstances during these years of litigation have dissolved the initial unity of the plaintiffs' position. This is most graphically demonstrated by the fact that the instant appeal is taken from a district court order which adopts a plan developed and agreed to between a substantial number of locally represented black plaintiffs and the school district's officials, the present majority of whom are black. The moving force behind the present appeal, the original counsel for the plaintiff class, emphasize that the plan approved and implemented by the district court was and still is objected to by them as constitutionally inadequate. They urge that reasonably available techniques to achieve further school desegregation, particularly the transportation, zoning and pairing of white students into predominantly black schools, have not been utilized. Finally, they emphasize such desegregation as has been accomplished under the plan approved has been effected entirely by the transportation of black pupils to predominantly white schools.

The district has been operated under the plan in question for the past 2 years. Its principal objective—to achieve at least 30% black enrollment in every majority white school in the system—has been substantially met. The

plan also achieved a goal of strengthening a program to encourage voluntary transfers by pupils of the majority race group in any school into any other school in which their race was in the minority. However, the flow in this transfer program has been only from black to white schools. The plan's success in these achievements has had little effect on the all, or substantially all, black schools. Out of 148 schools in the city system, Atlanta still operates 92 schools with student bodies which are over 90% black.

Following a suggestion initially advanced by the district court in July, 1971 (N.D.Ga., 332 F.Supp. 804 at 809), a separate action was brought before a three judge district court styled *Armour v. Nix*, Civil No. 16708 (N.D.Ga.). It seeks to combine or consolidate the Atlanta school system with the public educational facilities in neighboring communities. The order presently on appeal reserved any ruling on the question of such consolidation pending the outcome of the three judge action and notes that "all matters pertaining to the metropolitan school systems have been severed from this proceeding and are reserved for further resolution in *Armour*."

 The district court found the plan submitted by the parties to be constitutionally realistic and viable for the Atlanta school district, and to accord with the prior directives of this court in this case. It therefore adjudicated that "the Atlanta school district was unitary and has purged itself of all vestiges of the formerly state imposed dual system." Appellants urge that existing precedent will not allow us to affirm this adjudication of unitary status to a school district which has never utilized noncontiguous pairing, has never bussed white children into predominant black schools and in which over 60% of its schools are all—or substantially all—black. These contentions appear to be supported by substantial precedent. However, for today and in Atlanta, the unique features of this district distinguish every prior school case pronouncement. The district court found that the black citizens who occupy the majority of the posts on the school board, in two-thirds of the posts in the school administration and staff and in over 60% of the faculty, as well as the numerous nonappealing black plaintiffs who agreed to and support the present plan attest the district's lack of discrimination against black students as well as its freedom from the effects of past race-based practices. The district court also found that Atlanta's remaining one-race schools are the product of its preponderant majority of black pupils rather than a vestige of past segregation. These findings are not clearly erroneous. The aim of the Fourteenth Amendment guarantee of equal protection on which this litigation is based is to assure that state supported educational opportunity is afforded without regard to race; it is not to achieve racial integration in public schools. *See Milliken v. Bradley*, 418 U.S. 717, 740–741, 94 S.Ct. 3112, 3125, 41 L.Ed.2d 1069, 1088–1089 (1974); *Alexander v. Holmes County Board of Education*, 396 U.S. 19, 20, 90 S.Ct. 29, 29–30, 24 L.Ed.2d 19, 21 (1969); *Brown v. Board of Education*, 349 U.S. 294, 301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955). Conditions in most school districts have frequently caused courts to treat these aims as identical. In Atlanta, where white students now comprise a small minority and black citizens can control school policy, administration and staffing, they no longer are. *See Swann v. Charlotte-Mecklenburg Board of Education (Part V)*, 402 U.S. 1 at 22, 91 S.Ct. 1267 at 1279, 28 L.Ed.2d 554 at 570 (1971).

██ Plaintiff-appellants criticize the Majority to Minority Transfer Plan which the district court ordered implemented because the movement involved is entirely by black students. However, participation in this program is solely on a voluntary basis. In ultimate analysis it requires no more or less from pupils than the standard majority to minority provision which we have traditionally re-

quired be incorporated in all school desegregation orders in this circuit. *See, e. g., Ellis v. Board of Public Instruction,* 423 F.2d 203 (5th Cir. 1970).

Atlanta, "the city too busy to hate," has developed the reputation of being a community of racial and social good-will dedicated to effective progress in both its business and social conduct. Many intangibles we cannot now predict may have a beneficial effect in the future on the degree of racial integration in this system, but these possibilities are not the bases for our affirmance. Rather, we refuse to disturb the district court's approval of the plan submitted for the present operation of this school district, because based on live, present reality it is free of racial discrimination and it wears no proscribed badge of the past. *See Bradley v. School Board of City of Richmond, Virginia,* 462 F.2d 1058 (1972) (en banc), *affirmed by equally divided court,* 412 U.S. 92, 93 S.Ct. 1952, 36 L.Ed.2d 771 (1973); *Spencer v. Kugler,* 326 F.Supp. 1235 (D.N.J.1971), *affirmed in memorandum decision,* 404 U.S. 1027, 92 S.Ct. 707, 30 L.Ed.2d 723 (1972).

Thus, we affirm the court's action in approving and directing implementation of the present plan for the operation of the district and the related requirements for filing semi-annual reports and for the strengthening of the functioning of the Bi-Racial Committee. However, discretion clearly indicates that the termination of this litigation should await the final determination of the metropolitan area issues pending in *Armour v. Nix.* Therefore, the district court must retain jurisdiction of this cause at least until that consolidated cause has been finalized.

Affirmed.