**Robert KITE, as next friend of Greg Kite, Plaintiff,**

**Rudy Tomjanovich, and David W. Cowens' Basketball School, Inc., Intervenors,**

v.

**Bailey MARSHALL, Director, etc., Jerry S. Williams, Chairman, etc., other members of the University Interscholastic League Executive Committee, etc. and Billy Reagan, etc., Defendants.**

Civ. A. No. H–78–1171.

United States District Court, S. D. Texas, Houston Division.

July 27, 1978.

Dean H. Steffey, Buddy W. Gregory and N. John Hellums, Houston, Tex., for plaintiff Kite.

Charles Robertson and Carl M. Weisbrod, Dallas, Tex., for intervenors.

Kelly Frels and Pat Fry, Houston, Tex., for defendant Billy Reagan.

Robert W. Gauss, Asst. Atty. Gen., Austin, Tex. for defendants UIL.

### REASONS FOR INJUNCTION;

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

COWAN, District Judge.

*Introduction*

The Court has determined that Greg Kite and his parents are entitled to a preliminary injunction pending trial on the merits against all of the defendants. The injunction will restrain the defendants from the enforcement, as to Greg Kite, of Article VIII Section 21 of the .Constitution and Contest Rules of the University Interscholastic League (hereinafter UIL) which provides:

Sec. 21. *Training Camps Forbidden.* —Any student who attends a special athletic training camp in football or basketball shall be ineligible for a period of one year from the date he enrolls in the camp for any athletic contest in the League. This does not apply to *bona fide* summer camps giving an over-all activity program to the campers or students.

The reasons for this decision and instructions concerning the form of the decree are set out herein.

*Jurisdiction*

The jurisdiction of the Court, and hence the responsibility of the Court to address this controversy, arises from R.S. § 1979 codified at 42 U.S.C. § 1983, which reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The jurisdiction of the Court is also based upon 28 U.S.C. § 1331, § 1343(3) and (4).

■ UIL, an association of governmental entities, clearly performs its functions under color of state law. See *Bucha v. Illinois High School Ass'n*, 351 F.Supp. 69 (N.D.Ill. 1972); *Mitchell v. Louisiana High School Ass'n*, 430 F.2d 1155 (5th Cir. 1970); *Oklahoma High School Ass'n v. Bray*, 321 F.2d 269 (10th Cir. 1963); *Reed v. Nebraska School Ass'n*, 341 F.Supp. 258 (N.D.Neb. 1972); *Hennessey v. National Collegiate Athletic Ass'n*, 564 F.2d 1136 (5th Cir. 1977); *Saenz v. University Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973).

*Basic Facts*

The essential facts are exceptionally simple and compelling. Greg Kite is a superb high school basketball player and an all-A student. He is 6'11" tall and regarded by some sports commentators as being one of the finest high school basketball players in the United States. Currently he is in the summer vacation between his junior and senior years. He is interested in playing professional basketball, if qualified, and in a medical career specializing in that branch of medicine which explores, treats and does research in the relationship of the functioning of bones and muscles together. He has worked during the summer and has saved the approximately $150–$200 necessary to

attend a one-week "Superstars" basketball camp in which he will have an opportunity to play twenty or more games against other very large, very talented players under the supervision of several eminent coaches. Recruiting is not permitted at this camp. In this one week he will have an opportunity to play more basketball against other 7' tall (approximately) players than during an entire year in regular competition. The opportunity to play in this camp is very important for his development and also important in enabling him to determine if he is as promising a player as his present experience would indicate.

Greg Kite also desires to continue to play basketball for Madison High School in his senior year, and, from the standpoint of both his education and career, it is very important that he do so. This opportunity is very important because his senior year performance will have great significance in determining whether and what type of college scholarship he can obtain. A college scholarship is important because Greg's father is not financially able to pay all of Greg's college expense at some of the colleges which he might elect to attend and because of the enormous cost of a premedical and a medical education.

Greg's parents are anxious for him to attend the "Superstars' camp" and believe that their fundamental rights are infringed by the challenged UIL rule. The rule in Greg Kite's case basically prohibits Greg from attending the Superstars' basketball camp for one week during his summer vacation.

The rule in question is unique—Texas is the only one of the 50 states with a rule as broad and prohibitory as the one here in issue.

*Constitutional Rights Involved*

■ *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) and their progeny illustrate that under our Constitution there is a body of rights which are inherent in and properly left to the family—not to the state. *Pierce, supra*, involved the inviolate right of the family to educate its children in private—rather than public—schools. *Meyer, supra*, involved the right of the family to provide, through a school, instruction in the German language. The right of Greg Kite's family to assist him in developing to the fullest his extraordinary talent is just as inviolate as the rights of the parents in *Pierce, supra* and *Meyer, supra*.

Justice Rutledge has aptly stated in *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, at 166, 64 S.Ct. 438, at 442, 88 L.Ed.2d 645, at 652, that:

. . . It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Pierce v. Society of Sisters, supra*. And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter.

■ Also relevant here are the fundamental rights, guaranteed by our Constitution, of citizens to pursue and prepare themselves for lawful professions, and to choose their own associates. See *Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); *Griswold v. State of Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and many similar cases.

Our federal judiciary has repeatedly said that students and teachers do not lose their fundamental constitutional rights at the school house door. *Tinker v. Des Moines Ind. School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961); *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527 (5th Cir. 1977). A student and his family certainly should not lose these fundamental rights during a summer vacation, when the state's legitimate interest in a student's activities is greatly diminished and where the conduct in question has no relationship to the school's legitimate interest in creating an orderly learning environ-

ment. See reasoning in *Shanley v. Northeast Ind. School District*, 462 F.2d 960 (5th Cir. 1972).

■ Before the state or its instrumentalities may properly infringe upon a constitutionally protected right, the state must at the very least show some rational relationship between the rule which infringes the constitutional rights and the object to be achieved by the rule in question. This Court does not in any degree challenge or question the good faith or credibility of Dr. Marshall, Dr. Williams, Mr. Tusa, or anyone associated with any of the defendants; however, the evidence in this case reveals that, largely through historical accident, there is virtually no rational relationship between the rule in question and the legitimate objectives of promoting fair competition and preventing over-emphasis on sports. It is completely clear from the evidence that the legitimate objective of discouraging over-emphasis upon basketball, and creating an atmosphere of fair competition, may be achieved by less restrictive, less broad rules which do not impinge fundamental constitutional rights. The undisputed evidence reveals that while many states regulate attendance at summer athletic camps, non adopt the Texas approach of effectively prohibiting attendance for talented athletes who need scholarships.

The rule challenged here was, counsel for Greg Kite properly argues, an over-reaction to a specific problem. In 1963 Jefferson High School basketball team spent a substantial part of the summer in Colorado, with their regular coach, in constant practice. Predictably, Jefferson's team the following year was exceptionally good. The rule here challenged was promulgated in a good faith effort to meet the specific problem of the Jefferson High School Colorado summer. In other states the problem of the "Colorado summer" is dealt with by rules which provide that not more than two athletes from the same school may attend the same camp, or by a rule that an athlete who attends summer camp may not be coached by his or her regular high school coach at a summer camp. The injunction which this Court will issue here, even if affirmed on appeal or continued at the trial on the merits, should not be construed as preventing UIL from adopting either of the rules described in the last sentence, or any other rule (consistent with the constitutional rights of the students and parents) reasonably related to the proper goals of creating fair competition and discouraging over-emphasis upon any one sports activity.

The late Chief Justice Warren wisely states in *United States v. Robel*, 389 U.S. 258, at 265, 88 S.Ct. 419, at 424, 19 L.Ed.2d 508, at 515 (1967) that:

> It has become axiomatic that 'precision of regulation must be the touchstone in an area so closely touching upon our most precious freedoms.'

Certainly the right of a family to make decisions concerning the education of its own children is one of our most precious freedoms. The right of an individual to develop his talents to the utmost is one of our most precious freedoms. The fact that Texas is the only one of the 50 states which has adopted a rule as broad, pervasive and prohibitory as the Texas rule here under challenge is almost conclusive proof of fatal deficiency in that precision of regulation which is the touchstone where fundamental rights are involved. The challenged regulation, in Justice Warren's language, therefore suffers from "the fatal defect of overbreadth . . ." See 389 U.S. at 266, 88 S.Ct. at 425.

The regulation in the Court's view, does fall afoul of the broadness doctrine but is not vague—it can reasonably be interpreted and the Kite family understands its meaning.

The most persuasive reasons for denying relief are set forth in Dr. Marshall's memorandum of June 30, 1978 to member school administrators (see Intervenor's Exh. No. 2). Dr. Marshall is, without question, correct that the rule in question here should be changed by educators and not by the courts. Then Justice, now Attorney General, Bell has wisely stated that the courts are not competent to run the schools, see *Calhoun v. Cook*, 522 F.2d 717 (5th Cir. 1975); however,

we simply cannot lose sight of the fact that public schools in our society are state instrumentalities. The statutes of our Congress, and the cases decided by our Supreme Court, impose upon the federal judiciary the duty of intervening if actions of governmental entities infringe constitutional rights and persons with standing properly challenge these infringements. It is this Court's strong hope that, now that this problem has been brought to the attention of the defendants, the problem will be solved without further court intervention. Certainly it is not unprecedented for a governmental entity to render a controversy of this nature moot by voluntary amendment of a probably unconstitutional statute. See *Robinson v. Kimbrough*, 540 F.2d 1264 (5th Cir. 1976).

### Balancing of Factors in Connection with Grant of Preliminary Injunction

The balancing of the probable harm to the parties is the most important factor in the Court's thinking. The Court must balance the harm which will be suffered by the Kite family if relief is denied, against the inconvenience and harm, if any, to the defendants in the event relief is granted. The balancing task here is easy. Plaintiffs will suffer material harm if relief is denied. Extraordinary talent is rare. Greg Kite has extraordinary talent. Depriving the Kite family of any opportunity to develop Greg's superb talent fully is a severe deprivation.

This Court's decree, pending trial of the case on the merits, causes no damage or inconvenience to the defendants. If defendants are correct that the rule in question will pass constitutional muster (and with all respect to the defendants, this Court has determined preliminarily at least that the defendants are not correct), defendants can obtain full relief either on appeal or upon trial of this case on the merits. The opportunity which Greg Kite wishes to take advantage of, however, must be seized now or it is irretrievably lost.

Public interest is never served by a state's depriving an individual of a constitu-

tional right. Public interest is never served by depriving a talented individual of his right to develop his talents to the utmost.

### Analysis of State Cases

Three state cases arguably support the defendants' position. They are: *Texas High School Gym Ass'n v. Andrews*, 532 S.W.2d 142 (Tex.Civ.App.—San Antonio, 1975); *Art Gaines Baseball Camp v. Houston*, 500 S.W.2d 735 (Mo.App.—St. Louis, 1973); and *Brown v. Wells*, 288 Minn. 468, 181 N.W.2d 708 (1970).

The *Andrews* case is distinguishable, not applicable or not persuasive here for several reasons, to wit:

1. The defendants did not act or purport to act under color of state law in that case. The gym coaches association was not a state agency. Northeast Independent School District, which was of course a state agency, did not attempt to defend the rule in issue, but stated in open court that it supported the plaintiff's view that the rule was invalid.

2. Judge Cadena's opinion gave no consideration to the problem of whether the rule in issue deprived the plaintiffs of their fundamental rights protected by the United States Supreme Court in *Pierce, supra*, and *Meyer, supra*.

3. There was apparently no showing that the plaintiff in the *Andrews* case was a potential professional whose fundamental right to pursue training useful to his future occupation was impinged.

4. *Andrews* is a plea of privilege case, which in Texas jurisprudence has traditionally not been afforded great precedential value because plea of privilege cases are generally not reviewable by the Supreme Court of Texas.

The rule upheld in the *Art Gaines* case was a much more reasonable, rational rule. The rule there—like the rules in the other 49 states—would not prevent Greg Kite from attending the one week camp which

he wishes to attend. The opinions in *Art Gaines* and *Brown*, like the opinion in *Andrews*, contain no analysis of the fundamental rights guaranteed by the Bill of Rights to our United States Constitution.

### Other Federal Authority

*Mitchell v. Louisiana High School Ass'n*, 430 F.2d 1155 (5th Cir. 1970) and *Parish v. North Collegiate Athletic Ass'n*, 506 F.2d 1028 (5th Cir. 1975) also arguably support the defendant's position; but, in the Court's view, do not control here. The rules there challenged did not needlessly impinge fundamental constitutional rights and were reasonably related to legitimate state objectives. More applicable here, in the Court's view, is *Louisiana High School Athletic Ass'n v. St. Augustine High School*, 396 F.2d 224 (5th Cir. 1968) where the Court held that where a fundamental right or a suspect classification was in issue, the right to participate in interscholastic athletics becomes a constitutionally protected right.

### Intervenor's Claim for Preliminary Injunctive Relief

█ In the Court's view, intervenor's claim is meritorious and intervenor will probably succeed in the trial of the case on the merits; however, intervenor has not shown that he will be irreparably damaged if preliminary injunctive relief is not granted. For this reason the Court's decree should be limited to granting relief to Greg Kite and his family. Intervenor's Texas basketball camp for this summer has already been held, and it is the Court's hope that by the time intervenor is accepting applications for his 1979 summer camp, this case will either have been set for trial and tried on the merits, or the rule in question will have been voluntarily amended by UIL. The Court, however, encourages intervenor to seek preliminary injunctive relief, if by the time he is prepared to register applicants for his 1979 camp this controversy has not been resolved.

### Scope of Relief

This case is not a class action. Intervenor, although he has shown a probability of success on the merits, is not entitled to injunctive relief because he has shown no irreparable injury at the present time. The only relief to be granted in this Court's current decree is that defendants be restrained from enforcing the UIL rule as to Greg Kite, in the event Greg Kite elects to attend basketball camps for two weeks during the summer of August 1978. This Court's decision on the request for preliminary injunction should not be construed to grant more extensive relief than the narrow relief granted. This decree which this Court contemplates will afford relief only to Greg Kite and his parents. The decree should so specify.

### Security

In compliance with Rule 65(c), Fed.R.Civ. Proc., plaintiffs, as a condition of injunctive relief, will be required to post an undertaking in the amount of $50.00 to protect the defendants from any loss or damages which the defendants may incur in the event they have been wrongfully enjoined. In this connection, this Court sets this nominal security in the belief that no harm is inflicted upon the defendants by the enforcement of this preliminary injunction.