Jane DOE, on behalf of John Doe, a minor, Plaintiff,

v.

Bailey MARSHALL, Director of the University Interscholastic League, et al., Defendants.

Civ. A. No. G–78–174.

United States District Court, S. D. Texas, Galveston Division.

Aug. 16, 1978.

Matthew J. Horowitz, Houston, Tex., for plaintiff.

Robert W. Gauss, Asst. Atty. Gen., Austin, Tex., for defendant UIL.

REASONS FOR GRANTING OF PRELIMINARY INJUNCTION

COWAN, District Judge.

For the reasons stated herein, the Court has concluded that the plaintiff is entitled to a preliminary injunction restraining the

defendants from barring plaintiff from interscholastic competition and restraining the defendant McKenzie from denying to the plaintiff the right to participate in interscholastic athletics, particularly football, during the school year 1978–79. The reasons for the granting of this relief are set forth herein.

*Essential Facts*

The parties have appeared, introduced evidence, and on the basis of this evidence the Court finds that the facts set forth in the plaintiff's original complaint, a copy of which is appended hereto, are essentially correct, at least for purposes of determining the plaintiff's right to a preliminary injunction.

The essential facts are:

1. John Doe is a "handicapped" individual within the meaning of 29 U.S.C. § 794.
2. John Doe, because of an unusual set of circumstances, has a legitimate, compelling necessity for living with his grandparents rather than his parents.
3. John Doe, because of his severe psychiatric difficulties, has a genuine, compelling need to participate in interscholastic football, and denying him this right, under the circumstances, would create irreparable harm. Participation in athletics during his senior year could mean the difference between John Doe's growing up as a normal, productive adult, as distinguished from the possibility of his being institutionalized for the rest of his life.

Plaintiff has exhausted her apparent administrative remedies with the Alvin Independent School District (hereinafter AISD) and with the University Interscholastic League (hereinafter UIL), seeking relief from AISD, from the UIL, and from the District Executive Committee of the UIL which preliminarily determines eligibility.

Plaintiff seeks relief under 42 U.S.C. § 1983 and 29 U.S.C. § 794. 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

29 U.S.C. § 794 reads:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

■ A review of the legislative history and the cases which illuminate § 794 reveal that this congressional enactment, for practical purposes, places upon school districts and agencies which receive federal funds, such as the defendants, the duty of analyzing individually the needs of each handicapped student and devising a program which will enable each individual handicapped student to receive an appropriate, free public education. The failure to perform this analysis and structure a program suited to the needs of each handicapped child, constitutes discrimination against that child and a failure to provide an appropriate, free public education for the handicapped child. *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1973); *Crawford v. University of North Carolina,* 440 F.Supp. 1047 (N.D.N.C.1977); *Hairston v. Drosick,* 423 F.Supp. 180 (S.C.W.Va.1976); *Camenisch v. University of Texas,* 16 EPD P. 8336 (W.D.Tex.1978); *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975).

In this particular case, AISD is willing to perform its legal duty. AISD has, however, in effect, delegated to the UIL the right to determine which students will participate in interscholastic athletics.

The challenged rule of the UIL would, as construed by UIL, prohibit John Doe's playing football for AISD. There is apparently no structure within the organizational scheme of the UIL which provides a mechanism by which special and individual cases, such as John Doe's, may be given special and individual handling.

■ A review of the facts and the authorities set forth above has persuaded this Court that there is a reasonable probability that the plaintiff will prevail on the merits.

■ The Court, in determining whether or not to grant a preliminary injunction, must also balance the harm which will be inflicted upon the plaintiff, if relief is not granted, against the harm which will be visited upon the defendants in the event relief is granted. In this case, as in the recent case of *Kite v. Marshall*, 454 F.Supp. 1347 (S.D.Tex.1978), the balancing task is easy. The harm which would be inflicted upon this young man were he denied the opportunity to play football in his senior year at Alvin may be enormous. Playing football in his senior year may make the difference between this young man's growing up into a productive, happy individual, or, on the contrary, being institutionalized for the balance of his life. Denying this young man and his parents the right to the individualized treatment which 29 U.S.C. § 794 mandates, is a severe deprivation.

No harm is visited on the UIL, in this Court's view, by the preliminary injunction. The UIL rule in question was designed to prevent recruiting abuses and to prevent an athlete from irresponsibly "shopping around" for a school or a coach. There is no suggestion or hint in the evidence that either of these evils is in any degree involved here, and the plaintiff has proved persuasively that there are compelling medical and psychiatric reasons why this young man needs to go to school in Alvin, and needs to play football on the Alvin team.

The Court needs to balance the questions involved here in the light of the public interest. This Court believes that 29 U.S.C. § 794 is a humane, and reasoned statute and that the public interest is served by its enforcement. In any event, regardless of this Court's views concerning 29 U.S.C. § 794, it is the law as enacted by the Congress of the United States, and it is this Court's duty under 42 U.S.C. § 1983 to enforce it.

Defendants contend that 29 U.S.C. § 794 does not provide a private right of action.

The law is to the contrary. See *Lau v. Nichols, supra; Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Lloyd v. Regional Transportation*, 548 F.2d 1277 (7th Cir. 1977); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2nd Cir. 1977).

For the reasons set forth above, this Court has determined to grant a preliminary injunction enjoining the defendants from taking any action to prevent John Doe from playing football for Alvin Independent School District, during the football season commencing in August of 1978. This case is not a class action. The relief granted is granted only to John Doe and his parents, and is granted only pending the trial of this case on the merits.

## APPENDIX

## PLAINTIFF'S ORIGINAL PETITION

### I.

### PRELIMINARY STATEMENT

1. This is an action to enjoin the University Interscholastic League from barring an otherwise qualified athlete from interscholastic football competition solely because of a condition arising out of his handicap.

### II.

### NATURE OF ACTION

2. This action is brought pursuant to 42 U.S.C. Section 1983 and 29 U.S.C. Section 794.

### III.

### JURISDICTION

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. Section 1331 and 1343(3) and (4). The amount in controversy exceeds $10,000 exclusive of interest and costs.

## IV.
## PARTIES

4. Plaintiff Jane Doe is the mother of a seventeen year old boy, John Doe, who is now entering his senior year at Alvin High School. He is a qualified varsity football player who performed as a defensive lineman during the 1977 season at Friendswood High School.

5. Defendant Bailey Marshall is the Director of the University Interscholastic League (hereafter the "UIL"), an organization of public schools that is affiliated with the Bureau of Public School Services of the University of Texas. Defendant Marshall is also a member of the UIL's Executive Committee. The UIL, specifically its Executive Committee, is the rule-making and policy making body for most interscholastic public school athletic competition in the State of Texas. Defendant Marshall is sued individually and in his official capacities.

6. Defendant William Farney is State Athletic Director of the University Interscholastic League. He is also a member of the UIL's Executive Committee. He is being sued in his individual and official capacities.

7. Defendants Lynn F. Anderson, Lynn W. McCraw, Betty Thompson, Clifton Van Dyke, Jesse J. Villareal, and Jerre S. Williams are members of the Executive Committee of the UIL and are sued individually and in their official capacities.

8. Defendant Emmett McKenzie, Jr. is superintendent of the Alvin Independent School District and is sued in his official capacity.

## V.
## FACTS

9. During the football season of 1977, John Doe qualified for the varsity football team at Friendswood High School, and played the season as a "nose guard" a position on the defensive line. At that time, John Doe was living with his parents within the Friendswood School District.

10. Beginning in 1976, John Doe began showing symptoms of emotional illness. He received private care with two psychiatrists for brief periods of time. In March of 1976, he was hospitalized for four days in the psychiatric ward at Galveston County Memorial Hospital following incidents of violent behavior which his parents were unable to control.

11. In 1977, John Doe's father was diagnosed as being terminally ill with cancer. Soon thereafter, John Doe's psychological problems became more intense. Following an unusually violent series of quarrels with his family during the Christmas holidays of 1977–1978, he was hospitalized at University of Texas Medical Branch (John Sealy) Hospital in Galveston. He was released after eight days of treatment.

12. During February and March of 1978, John Doe was treated four times by a psychologist at Texas Research Institute for Mental Sciences, who diagnosed him as suffering from an adolescent adjustment reaction, but with signs of more profound underlying disturbances.

13. In March of 1978, John Doe again became violent toward his parents and, following a particularly severe incident during which he threatened his parents with a loaded shotgun, he was incarcerated by the juvenile authorities. Following a consultation with the family, John Doe's therapist recommended that he be taken out of the family home and placed with his maternal grandparents living in Alvin. This was a considered therapeutic decision designed to ameliorate John Doe's emotional difficulties.

14. On March 9, 1978, by the order of Don B. Morgan, Acting Judge of the Family District Court, 306 Judicial District, Galveston County, John Doe's grandparents were named his managing conservators. John Doe has since lived with his grandparents in Alvin. He began attending Alvin High School that same month and plans to enroll at Alvin High for his last year of high school.

15. John Doe's therapist believes that his participation in varsity football is therapeu-

▉▉▉▉▉▉▉ tically beneficial. She also believes that it would be advisable for John Doe to play football at Alvin High rather than Friendswood High since, in her opinion, requiring John Doe to play football at Friendswood would be emotionally detrimental. The superintendents of the Friendswood and Alvin Independent School Districts have concurred in this judgment.

16. In March, 1978, Jane Doe asked the principal of Friendswood High to determine if John Doe would be eligible to participate during the next school year as a member of the Alvin High School Varsity Football Team. The principal referred this inquiry to the UIL office in Austin and Defendants were subsequently informed of all the pertinent details.

17. In May, 1978, Dr. Emmett McKenzie, Superintendent of the Alvin Independent School District, requested the UIL's District 14–AAAA Executive Committee to rule on the question of John Doe's eligibility to play at Alvin High School. This request was consistent with the UIL's rules, under which eligibility decisions are decided in the first instance by district committees and then are reviewed by the UIL's State Executive Committee.

18. On May 17, 1978, Dr. McKenzie received a letter from Defendant Bill Farney, the UIL's State Athletic Director, stating that John Doe would not be eligible to participate on the Alvin High School Varsity Football Team. Defendant Farney premised this decision on Article VIII, Section 13 of the UIL's Constitution and Contest Rules which states that: a. A student changing schools whose parents or guardians do not reside in the school district is ineligible for varsity contests; b. a student living with a guardian is eligible only if the guardianship is of one year's standing; and c. where both parents are still alive, the UIL will not acknowledge the existence of a legal guardianship. A copy of this letter is attached as Exhibit A.

19. Based on Defendant Farney's letter, Dr. McKenzie concluded that the UIL had preempted the role of the District Executive Committee and that it would therefore be futile to convene a meeting of that committee. This decision is reflected in a letter attached to this complaint as Exhibit B.

20. The Alvin High School Varsity Football Team commences practice on August 16, 1978. John Doe will suffer irreparable injury if he is not permitted to join the team by that date.

21. The UIL can accommodate John Doe's needs resulting from his handicap without in any way jeopardizing the effectiveness of its residency requirements.

22. On June 27, 1978, John Doe's attorney filed a complaint with the Office of Civil Rights of the Department of Health, Education, and Welfare, alleging that Defendants were in violation of 29 U.S.C. Section 794. A copy of this complaint is attached as Exhibit C. The Office of Civil Rights has yet to render a decision.

## VI.

## CAUSE OF ACTION

23. Defendants' refusal to accommodate John Doe's special needs constitutes discrimination based on handicap in violation of 29 U.S.C. Section 794.

24. Defendants have further violated 29 U.S.C. Section 794 by failing to accord John Doe adequate process as required by 45 CFR Section 84.36.

## VII.

## PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Declare that Defendants' actions are in violation of 29 U.S.C. Section 794.

2. Temporarily and permanently enjoin Defendants from barring John Doe's participation on the Alvin High School Varsity Football Team.

3. Order Defendants to adopt a procedural mechanism consistent with the requirements of 45 CFR 84.36.

4. Grant Plaintiffs their costs and attorney's fees.

5. Grant Plaintiffs such other relief as justice may require.

## EXHIBIT A

## THE UNIVERSITY INTERSCHOLASTIC LEAGUE
BOX 8028—UNIVERSITY STATION
AUSTIN, TEXAS  78712

May 15, 1978

Mr. Emmett H. McKenzie, Jr.,
Superintendent
Alvin ISD
605 West House Street
Alvin, TX  77511

Dear Mr. McKenzie:

The League Office has received a letter from Don B. Morgan, Judge, 212th Judicial District Court, concerning a student who is residing with his grandparents in Alvin, Texas.

We at the League Office have been in telephone conversation with Mrs. [Doe].  We explained the rule concerning senior transfers (Article VIII, Section 14).  We outlined to her that a student eligible under this section must also be eligible under Article VIII, Section 13.  According to Article VIII, Section 13, a student changing schools whose parents or guardians do not reside in the school district is ineligible for varsity contests.  If both parents are alive, there is no possibility of a guardianship.  We also explained to the mother than, in our opinion, based upon the CONSTITUTION AND CONTEST RULES, the only way her son would be eligible residing with his grandparents in Alvin would be for her to be a bona fide resident in the Alvin school district.  A bona fide residence requires that the parent actually live in the district, move their furniture into the district to set up their home, vote in the district, receive their mail at their residence, and plan to continue to live there.  Moving into the district temporarily in an attempt to enable a student to participate in athletics would not be considered a bona fide residence.

We wanted to call your attention to this particular matter so that you would know what had transpired between the League Office and the parents.

Respectfully,

(s) Wm. D. Farney
Bill Farney
State Athletic Director

BF:kd
cc:  Dr. Bailey Marshall

▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆

EXHIBIT B

## ALVIN INDEPENDENT SCHOOL DISTRICT
Alvin, Texas 77511

May 17, 1978

Preston: Bullard

The attached letter was received in my office today. Mr. Farney's report differs from what I had been told and from Judge Don Morgan's letter.

I have told Coach Ward, our Athletic Director, to advise Mrs. [Doe] that I can not, in light of Mr. Farney's letter, pursue the question of [John's] eligibility. If there is further checking to be done, she will be responsible.

You may wish to advise the other schools at your convenience. Thanks for your efforts in regard to the problem.

Sincerely,

Emmett [McKenzie]
[Superintendent]

EXHIBIT C

## THE CLARK READ FOUNDATION, INC.
1236 West Gray   Houston, Texas 77019   713/524-5925

June 27, 1978

Ms. Dorothy D. Stuck
Office of Civil Rights
Department of Health, Education & Welfare
Region 6
1200 Main Tower Building
Dallas, Texas 75202

RE: [John Doe]

Dear Ms. Stuck:

The Clark Read Foundation, affiliated with but separate from the Greater Houston American Civil Liberties Union, has been retained to represent [John Doe], a senior at Alvin High School. We believe that for purposes of 29 U.S.C. § 794, Mr. [Doe] is a handicapped person and that the University Interscholastic League, the body which governs interscholastic competition in the State of Texas, has discriminated against Mr. [Doe], based upon his handicap. By this letter, we are asking the Office of Civil Rights to investigate and resolve this matter.

### HISTORY OF HANDICAPPED INDIVIDUAL

[John Doe] is a seventeen year old boy with a history of debilitating emotional illness. He has been diagnosed as emotionally ill by John Sealy Hospital in Galveston, Texas, and Texas Research Institute of Mental Sciences in Houston, Texas. A letter attesting to John's illness from Sharon B. Dunbar, Ph.D. and clinical psychologist at T.R.I.M.S. is enclosed. [John's] emotional problems increased when his father was diagnosed as being

terminally ill with cancer. Conflict in the home and in his school became severe, and, in March of 1978, upon the recommendation of Dr. Dunbar, [John] was removed from the family home and reassigned to a school in his grandparents' town. He was placed in the care of his grandparents, and to formalize these changes, [John's] grandparents * * * were made [John's] managing conservators.

(A copy of the disposition order is attached). Since [John] began living with his grandparents, his emotional status and his performance in school have significantly improved.

Under 29 U.S.C. § 794, 29 U.S.C. § 706(6) and 45 CFR § 84.3(1)(B), [John Doe] is clearly a handicapped individual. He has had severe emotional illness which at times has substantially limited a major life activity of learning.

## HISTORY OF THE DISCRIMINATION

[John Doe] played football for Friendswood High in 1977 and 1976. He now wishes to play football for Alvin High, the school to which he transferred. Football is an activity at which [John] excels, and in the opinion of his psychologist, provides a significant therapeutic benefit to relieve his handicap disability. [John's] participation in the sport arouses within him feelings of pride and competence and gives him an acceptable outlet for aggressive behavior that emanates from his emotional illness. In addition, [John Doe], if allowed to play, may be granted a college athletic scholarship.

Both Alvin High School and Friendswood High are willing to allow [John] to play at Alvin High in Fall of 1978. The University Interscholastic League, however, prohibits a student from competing in interscholastic athletics for a school district other than that in which his parents reside unless the student falls within certain narrowly drawn exceptions. The UIL has applied this rule to bar [John] from playing at Alvin High despite the fact that [John's] managing conservators reside in the Alvin School District.

We recognize that the UIL's residency requirement addresses a valid purpose. Nonetheless, as applied in this context, the rule arbitrarily bars a student's participation in interscholastic activities where this participation is important for the student's emotional stability and is likely to improve his ability to take better advantage of the total educational experience. We believe that the UIL can reasonably accommodate [John's] special needs without in any way jeopardizing its overall athletic program. Moreover, we are convinced that because such a reasonable accommodation is possible, it is in fact required by 29 U.S.C. § 794.

The UIL has offered to allow [John] to continue to play football at Friendswood High School. [John's] psychologist believes that it would be emotionally traumatic for [John] to return to Friendswood even for the limited purpose of playing football and we therefore do not believe that this offer constitutes a reasonable accommodation.

In treatment of emotionally disturbed adolescents, it is frequently necessary to have them removed from the home and placed in foster care in order to relieve acute symptoms of emotional illness. The UIL's policy allows no exceptions for this valid need as it relates to emotionally handicapped students. Frequently, this removal is done on an informal basis. Here, the family has moved carefully and deliberately and in accordance with the Texas Family Code to secure their son's full legal rights. The managing

conservatorship is the most extensive form of guardianship allowed under the Family Code, and there is no reason why the League should not recognize this legal status. In addition, the transfer of [John] was done for therapeutic reasons, with full documentation of [John's] handicap and prescribed treatment. To make [John] ineligible because of his transfer is to make him ineligible because of his treatment for a handicap in violation of 29 U.S.C. § 794.

We request a determination of this issue at the earliest possible date. Football practice for Alvin High begins August 3, 1978. Any delay beyond that date will cause irreparable injury to [John Doe's] football career.

Sincerely yours,

/s/ Matthew Horowitz
Matthew Horowitz
Staff Counsel

CC: Mrs. [Jane Doe]