Catherine WALSH, etc., et al.,
Plaintiffs-Appellees,

v.

LOUISIANA HIGH SCHOOL ATHLETIC
ASSOCIATION, Defendant-Appellant,

Lutheran High School Association of
Greater New Orleans, Defendant.

No. 77–1792.

United States Court of Appeals,
Fifth Circuit.

April 30, 1980.

Rehearing and Rehearing En Banc
Denied June 23, 1980.

**154**

Charles M. Hughes, R. Bradley Lewis, Bogalusa, La., for defendant-appellant.

Robert J. Oster, Edmund T. Wegener, Jr., New Orleans, La., for plaintiffs-appellees.

Thomas L. Giraud, New Orleans, La., for Lutheran High Assn.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Catherine Walsh, Charles Lodriguss, William LeBouef, Jr., and Elmer A. Groth, Jr., individually and on behalf of their named minor children, brought this action against the Louisiana High School Athletic Association [LHSAA] and the Lutheran High School Association of Greater New Orleans.[1] The plaintiffs alleged in their complaint that the existence and enforcement of the LHSAA's student transfer rule unduly burdened their first amendment right to the free exercise of religion and deprived them of their fourteenth amendment right of equal protection. The district court's April 1, 1976, pre-trial order re-ferred to an additional claim based on a denial of the plaintiffs' fourteenth amendment right to due process. In an opinion dated September 21, 1976, the district court denied the defendants' motion to dismiss for mootness. Subsequently, in an opinion dated March 18, 1977, the district court determined that it had subject matter jurisdiction of this action under 28 U.S.C. § 1343(3), that the transfer rule did not unconstitutionally burden the plaintiffs' first amendment right to the free exercise of religion, that the transfer rule did not unconstitutionally offend due process, but that the transfer rule as applied in Orleans Parish, Louisiana, unconstitutionally denied the plaintiffs the equal protection of the laws. *Walsh v. Louisiana High School Athletic Ass'n,* 428 F.Supp. 1261 (E.D.La.1977). The defendants appealed. We agree with the district court's determination of the issues of jurisdiction, mootness, free exercise of religion, and due process, but disagree with district court's determination that the transfer rule as applied in Orleans Parish, Louisiana, is unconstitutional under the equal protection clause of the fourteenth amendment.

## I. FACTS

The LHSAA is a voluntary association of public, private, and parochial high schools in the State of Louisiana. The purpose of the LHSAA is to promote, regulate, and direct the interscholastic athletic activities of its member schools. In fulfilling its purpose, it promulgates and enforces various rules and regulations governing the competitive athletic activities of its members. The LHSAA promulgated one such rule in an effort to discourage or eliminate the recruitment of promising young athletes upon graduation from elementary or junior high schools. This rule provides in relevant part

1. The plaintiffs properly brought this action against both the LHSAA, who promulgated the transfer rule, and the Lutheran High School Association of Greater New Orleans, who, as a member of the LHSAA, enforced the regulation. The dispute, however, exists primarily between the plaintiffs and the LHSAA. In a separate answer to the plaintiffs' complaint, the Lutheran High School Association admitted all of the plaintiffs' allegations and submitted the matter to the district court for such relief and disposition as the court deemed proper. Although nominally an appellant before this court, the Lutheran High School Association took no active part in this appeal.

that, upon the completion of elementary or junior high school, a student is eligible to participate immediately in interscholastic athletic competition only at a high school within his home district.[2] These home districts are the geographical areas designated as the attendance zones for the public high schools by the local school boards of the State of Louisiana. The home district for a private or parochial school is the geographical attendance zone of the public school in which the private or parochial school is situated. Under the transfer rule, a student is ineligible to participate in interscholastic athletic competition for a period of one year if he matriculates at a high school outside of his home district after completing elementary or junior high school.

Lutheran High School is the only high school in the greater New Orleans metropolitan area that is owned and operated by members of the Lutheran Church Missouri Synod. There are seven Lutheran-affiliated elementary or junior high schools in the greater New Orleans area. However, none of these elementary or junior high schools are located in Lutheran High School's designated home district. As a result, any student who enrolls at Lutheran High School upon graduation from any of the seven Lutheran elementary or junior high schools in the metropolitan New Orleans area is ineligible to compete in interscholastic athletic competition for one year. Each of the minor plaintiffs originally named in the complaint graduated from Lutheran elementary schools, enrolled at Lutheran

High School, and were declared ineligible for interscholastic athletic competition during their ninth grade year.

## II. JURISDICTION

■ The LHSAA contends that the district court erred in determining that it had jurisdiction of this action under 28 U.S.C. § 1343(3). It argues first that, as to it, this is not a "civil action authorized by law" within the meaning of § 1343 because it is not a "person" within the meaning of 42 U.S.C. § 1983. It contends second that § 1343(3) jurisdiction is lacking because the action fails to raise a substantial federal question. We reject these arguments.

The LHSAA argues that, because it is not a "person" within the meaning of § 1983, this is not a "civil action authorized by law" and hence the district court is without § 1343(3) jurisdiction as to it.[3] See, e g., Johnson v. City of Arcadia, 450 F.Supp. 1363, 1377 (M.D.Fla.1978). It reasons that it is a local governing body similar to municipalities and other political subdivisions of a state and, hence, is not a "person" for the purposes of § 1983. It relies on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and its progeny, Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Whatever merit there may have been in the association's argument has vanished in light of the Supreme Court's recent decision in Monell v. Depart-

---

**2.** The transfer rule appears at art. I, § 8 of the by-laws of the LHSAA. That section, in relevant part, provides that:

> Section 8. Transfer Rule
>
> Rule 1—No student who enrolls in one school and later transfers to, or enrolls in another, shall be eligible to represent the latter school in any athletic contest.
>
> A student shall be considered as enrolled in a high school when he has enrolled and attended any class in that school. Attendance in any class constitutes enrollment.
>
> EXCEPTION I—. . .
>
> A student may transfer upon the completion of the seventh or eighth grade to any high school in his home district and be eligible immediately.

> EXCEPTION II—Any student after completing one year's attendance from date of enrollment, in a high school, and fulfilling all other requirements, becomes eligible.
>
> . . . . .
>
> Rule 2—. . .
>
> School districts or attendance areas, designated by the Public School Boards, determine eligibility under the transfer rule. School bus routes do not establish eligibility.
>
> Private schools shall be bound by the same school district or attendance areas designed by the school board for the public school physically located in their area.

**3.** No party disputes that the Lutheran High School Association of Greater New Orleans is a "person" for the purposes of § 1983.

ment of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See Gay Student Services v. Texas A & M University, 612 F.2d 160, 164 (5th Cir. 1980); Kingsville Independent School District v. Cooper, 611 F.2d 1109, 1112 (5th Cir. 1980).

The LHSAA is a voluntary association of private, parochial, and public high schools. It is not a regularly constituted agency of the State of Louisiana. Neither is its existence provided for by the constitution, statutes, or regulations of the State of Louisiana. The fact that its conduct constitutes state action for the purposes of the fourteenth amendment, see Louisiana High School Athletic Ass'n v. St. Augustine High School, 396 F.2d 224, 227 (5th Cir. 1968), does not dictate that it is not a "person" for the purposes of the Civil Rights Acts. We therefore conclude that the LHSAA is a person for the purposes of § 1983, see Wright v. Arkansas Activities Ass'n, 501 F.2d 25, 28 (8th Cir. 1974), and that as to the LHSAA there exists a "civil action authorized by law" within the meaning of § 1343(3).

 The defendants next contend that § 1343(3) jurisdiction is lacking because this action fails to raise a substantial federal question. Under § 1343(3), federal district courts have original jurisdiction over "civil action[s] authorized by law" that seek "[t]o redress the deprivation, under color of State law, . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights." 28 U.S.C. § 1343(3). A district court must entertain such suits unless the federal question alleged is clearly immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous. See generally Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471, 478 (1977); Bell v. Hood, 327 U.S. 678, 681–83, 66 S.Ct. 773, 776, 90 L.Ed. 939, 942–44 (1946); Southpark Square, Ltd. v. City of Jackson, 565 F.2d 338, 341 (5th Cir. 1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). The first exception—

that the federal question be "immaterial"— is not involved in this case because the constitutional claims, whatever their merit or substance, are the essence of the action. See Creel v. City of Atlanta, 399 F.2d 777, 778 (5th Cir. 1968). To determine whether the second exception—that the federal question be "wholly insubstantial and frivolous"—applies we must inquire whether the constitutional claims are obviously without merit or are clearly foreclosed by the previous decisions of the United States Supreme Court. See Southpark Square, Ltd. v. City of Jackson, 565 F.2d at 342; Mays v. Kirk, 414 F.2d 131, 135 (5th Cir. 1969).

This court previously has held that an action alleging a violation of due process arising solely from an interference with a student's ability to participate in interscholastic athletic competition fails to raise a substantial federal question so as to clothe a federal district court with jurisdiction under § 1343(3). Mitchell v. Louisiana High School Athletic Ass'n, 430 F.2d 1155, 1157–58 (5th Cir. 1970). Similarly, prior case authority in this circuit suggests that an action alleging a violation of equal protection arising from an interference with a student's ability to participate in interscholastic athletic competition fails to raise a substantial federal question unless it is alleged that the challenged classification burdens a suspect class. Compare id. at 1157–59 with Louisiana High School Athletic Ass'n v. St. Augustine High School, 396 F.2d at 227–29. But see Denis J. O'Connell High School v. Virginia High School League, 581 F.2d 81 (4th Cir. 1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979).

 In this action, however, in addition to raising due process and equal protection claims, the plaintiffs alleged that the transfer rule unduly burdened their first amendment right to the free exercise of religion. It cannot be said that the first amendment claim asserted in the plaintiffs' complaint is "obviously without merit." See Johnston v. Spriggs, 77 F.R.D. 492, 493–94 (W.D.La. 1978). Neither can it be said that the first amendment claim advanced in the plain-

tiffs' complaint is clearly foreclosed by previous decisions of the United States Supreme Court.

Accordingly, the district court properly determined that it had subject matter jurisdiction of this action under § 1343(3).

### III. MOOTNESS

■ The LHSAA raised the issue of mootness before the district court and again on appeal, contending that this case is moot because all of the minor plaintiffs originally named in the complaint have completed the ninth grade at Lutheran High School and no longer are subject to the one-year period of athletic ineligibility. The district court determined that the action is not moot because it fell within the "capable of repetition, yet evading review" exception established in *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 514–16, 31 S.Ct. 279, 283–84, 55 L.Ed. 310, 315–17 (1911). We agree.

The "capable of repetition, yet evading review" exception requires that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 352 (1975). *See Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 187, 99 S.Ct. 983, 992, 59 L.Ed.2d 230, 243 (1979); *Securities & Exchange Commission v. Sloan*, 436 U.S. 103, 109, 98 S.Ct. 1702, 1707, 56 L.Ed.2d 148, 155 (1978); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707, 716 (1978). *See generally Sosna v. Iowa*, 419 U.S. 393, 399–401, 95 S.Ct. 553, 557–58, 42 L.Ed.2d 532, 540–41 (1975). Both prongs of the test are met in this case. First, the experience of modern litigation demonstrates that the constitutional challenges to the transfer rule cannot be litigated fully during the one-year period

of athletic ineligibility suffered by an individual student. Second, because the plaintiff parents had other minor children who currently were enrolled at various Lutheran elementary or junior high schools and who ultimately would matriculate at Lutheran High School, the district court reasonably could expect that the same complaining parties again would be subjected to the challenged action in the future. Indeed, at oral argument counsel confirmed the wisdom of the district court's determination by advising this court that one of the plaintiffs' other minor children who ultimately matriculated at Lutheran High School from one of the Lutheran elementary schools currently was enrolled in the ninth grade and was subject to the effects of the transfer rule.[4]

### IV. FREE EXERCISE OF RELIGION

The plaintiffs argue that the transfer rule unconstitutionally burdens their free exercise of religion guaranteed by the first amendment. These parents indicate a sincere belief that Christian education is an integral part of the mission and ministry of the Lutheran church and that the family, rather than the state, is responsible for a child's education. Furthermore, they indicate that they responded to the dictates and compulsion of their religious beliefs by enrolling their children in Lutheran-affiliated schools. The district court determined that the operation of the transfer rule did not violate the first amendment. We agree.

■ A regulation that is neutral on its face and is motivated by legitimate secular concerns may, in its application, offend the first amendment requirement of governmental neutrality if it unduly burdens the free exercise of religion. *Wisconsin v. Yoder*, 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15, 27 (1972). *See also Gillette v. United States*, 401 U.S. 437, 462, 91 S.Ct. 828, 842, 28 L.Ed.2d 168, 187 (1971); *Braunfeld v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563, 568 (1961). To

---

4. The LHSAA currently is not enforcing the transfer rule against students at Lutheran High School but has announced its intention to en-

force the regulation should it prevail on this appeal.

pass constitutional muster, the application of such a regulation either (1) must not interfere with, burden, or deny the free exercise of a legitimate religious belief or (2) must be justified by a state interest of sufficient magnitude to override the interest claiming protection under the free exercise clause. *Wisconsin v. Yoder*, 406 U.S. at 214, 92 S.Ct. at 1532, 32 L.Ed.2d at 24; *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965, 970 (1973). *See also Braunfeld v. Brown*, 366 U.S. at 607, 81 S.Ct. at 1148, 6 L.Ed.2d at 568.

■ It cannot be denied that, by imposing a cost on a parent's decision to enroll his children in Lutheran High School upon graduation from any of the seven Lutheran elementary schools in the metropolitan New Orleans area, the transfer rule places an indirect and incidental burden on the free exercise of the religious beliefs of these parents. The decisive issue is whether this indirect and incidental burden is an impermissible price to exact from these parents for the free exercise of their religious beliefs. We believe it is not.

The encroachment of the transfer rule on the free exercise of religion is both limited in scope and insignificant in magnitude. The transfer rule does not deny these parents or their children the right to actively practice the Lutheran faith. Similarly, it neither prohibits a parent from enrolling his child in Lutheran High School nor interferes with the ability of such a child to obtain the religious education provided by that school. The rule merely prevents a child from participating in interscholastic athletic competition during his ninth grade year. Even so, the ambit of the rule is limited. It does not forbid a student from participating in all athletic activities. The transfer rule does not prevent ninth graders at Lutheran High School from participating in intramural athletic competition. Neither does the rule prohibit such students from trying out for or from practicing with the Lutheran High School varsity athletic

teams. It simply prevents a child from representing Lutheran High School in an interscholastic athletic contest for a period of one year. The burden placed on the free exercise of religion is *de minimis*.

The relatively minor and inconsequential nature of this burden is confirmed by reference to other restrictions placed on the free exercise of religion which, although far greater than that existing here, have been found constitutionally permissible. *See e. g., Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (right of a conscientious objector to receive veterans' educational benefits); *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (right of an Orthodox Jew to keep his business open on Sunday); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (right of a Jehovah's Witness to sell or distribute periodicals and literature).

Although the *de minimis* nature of the burden placed on the plaintiffs' free exercise of religion is sufficient to reject plaintiffs' first amendment challenge to the LHSAA transfer rule, see J. Nowak, R. Rotunda, J. Young, *Handbook on Constitutional Law* 872 (1978), we further find the application of the transfer rule, together with its incidental burden on the free exercise of religion, is constitutionally justified by the magnitude of the state's interest in the regulation and the lack of an equally effective and workable alternative.

The state's interest in the regulation is compelling. Its interest in regulating interscholastic athletic competition is not disputed by the parties to this litigation. Indeed, all parties recognize that the recruiting of promising young athletes properly may be the focus of LHSAA regulations because of the unwholesome and harmful impact such recruiting has both on interscholastic athletic competition and on the individual student athletes. The LHSAA promulgated the transfer rule to lessen or remove that harmful impact.[5]

---

5. The plaintiffs do not dispute the LHSAA's valid interest in deterring or eliminating the

recruiting of promising young athletes. Rather, they argue that the burden imposed on the

The state's compelling interest in this particular regulation is magnified in light of the district court's determination that no equally effective alternative means exist to combat the problem of recruiting. The plaintiffs introduced evidence showing the methods utilized by regulating bodies in other states to combat the recruiting of athletes. The district court, however, specifically rejected those alternate plans that included case-by-case inquiries into suspected recruiting violations or an after-the-fact punishment of those involved in such violations. It reasoned that, as a pragmatic matter, the only feasible solution to the problem of recruiting was the adoption and enforcement of a clear, readily understandable prophylaxis that limits the alternatives available to students. The district court concluded that "[i]f there is an alternative [to the transfer rule] that is workable, its feasibility has not been shown." 428 F.Supp. at 1269. A review of the evidence presented to the district court shows this finding of fact not to be clearly erroneous. Fed.R.Civ.P. 52(a).

## V. DUE PROCESS

The plaintiffs contend that the transfer rule violates their fourteenth amendment right of due process. They note that a student's legitimate entitlement to an education is a property interest protected by the due process clause of the fourteenth amendment. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725, 734 (1975). They contend that this property interest extends to all integral parts of the educational process and includes a constitutionally protected entitlement to participate in interscholastic athletic competition. We disagree.

This court previously has addressed this precise issue. *See Mitchell v. Louisiana High School Athletic Association*, 430 F.2d 1155 (5th Cir. 1970). In *Mitchell*, this court held that "[t]he privilege of participating in interscholastic athletics must be deemed to fall . . . outside the protection of due process." *Id.* at 1158. The holding and

rationale of *Mitchell* has been followed consistently in this and other circuits. *See Parish v. National Collegiate Athletic Ass'n*, 506 F.2d 1028 (5th Cir. 1975). *See also Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121, 123–24 (3d Cir. 1978); *Hamilton v. Tennessee Secondary School Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir. 1976); *Albach v. Odle*, 531 F.2d 983, 984–85 (10th Cir. 1976).

▪ The plaintiffs argue that *Mitchell* no longer is viable authority. They rely on those Supreme Court cases in which the historical distinction between rights and privileges was abandoned. The plaintiffs correctly note that a constitutional challenge to the denial of a benefit cannot be answered merely by arguing that the benefit is a privilege rather than a right. *See, e. g., Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287, 296 (1970); *Shapiro v. Thompson*, 394 U.S. 618, 627 n.6, 89 S.Ct. 1322, 1327 n.6, 22 L.Ed.2d 600, 611 n.6 (1969); *Sherbert v. Verner*, 374 U.S. at 404–06, 83 S.Ct. at 1794–95, 10 L.Ed.2d at 970–72. However, the plaintiffs fail to note that, despite the abandonment of the right-privilege distinction, there remain some interests that are outside the scope of constitutional protection.

▪ The due process clause of the fourteenth amendment extends constitutional protection to those fundamental aspects of life, liberty, and property that rise to the level of a "legitimate claim of entitlement" but does not protect lesser interests or "mere expectations." *See Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39 (1978); *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement. As decided in *Mitchell*, it falls "outside the protection of due

---

free exercise of religion is unduly heavy and that there exists alternate means to attack the

evils of recruiting which would impose little or no burden on the free exercise of religion.

process." The district court properly denied the plaintiffs relief based on their due process claim.

## VI. EQUAL PROTECTION

The district court determined that the transfer rule as applied in Orleans Parish, Louisiana, violated the fourteenth amendment guarantee of equal protection. We disagree.

The plaintiffs raise two distinct equal protection issues. First, they contend that the transfer rule creates two classes of students: those who enroll in a high school within their home district upon the completion of elementary or junior high school and those who enroll in a high school outside their home district. They further contend that the rule treats these two classes of students differently by permitting members of the former group to compete immediately in interscholastic athletic competition while declaring the members of the latter group ineligible for such competition for a period of one year.

Second, the plaintiffs claim that the transfer rule as it is applied in Orleans Parish creates two classes of schools: those schools that have parishwide home districts[6] and those schools that have home districts that are less than parishwide. They claim that the transfer rule treats students who attend these two classes of schools differently, observing that students from throughout Orleans Parish, if qualified, may enroll at any of the schools in the former group and be immediately eligible for interscholastic athletic competition, while district nonresident students, though they live in Orleans Parish, may not enroll at schools in the latter group without being declared ineligible to compete in interscholastic athletic contests for a period of one year.

■ Where, as here, the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See e. g., Parham v. Hughes*, 441 U.S. 347, 350–53, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269, 273–76 (1979); *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516 (1976); *Jackson v. Marine Exploration Co.*, 583 F.2d 1336, 1346 (5th Cir. 1978). Both classifications meet this standard.

■ The classification of students created by the transfer rule is rationally related to the state's valid and legitimate interest in deterring or eliminating the recruitment of promising young athletes by overzealous coaches, fans, and faculty members. The district court recognized that prior to the promulgation of the transfer rule

> [h]igh schools, public and private, eager to enlist promising athletes, were urging students who would otherwise attend another school to change the school they would attend in order to enhance the quality of the teams at the recruiting school. Some alumni associations, athletic clubs, and even principals and coaches resorted to various expedients unrelated to educational goals to recruit promising student athletes. Therefore, promising young athletes were being subjected to inducements to go to one school or another purely to enable the school to field a better team.

428 F.Supp. at 1264. The rule seeks to deter or eliminate such recruitment. Accordingly, it imposes a direct cost on an identifiable event that must necessarily accompany that conduct. Moreover, by exacting its price in terms of a period of interscholastic athletic ineligibility, the transfer rule focuses its effect on athletic recruiting. The rule adopted by the LHSAA, together with the classification that results, is rationally and logically related to the association's valid and legitimate interest.

---

**6.** The Orleans Parish School Board designated the entire Orleans Parish as the attendance zone for four special public high schools: Ben Franklin, McDonough 35, McMain Magnet, and Booker T. Washington. Each school either offers a special curriculum or has special entrance requirements.

Similarly, the classification of all schools resulting from the LHSAA's decision to define home districts in terms of local public school attendance zones passes constitutional muster. It is undisputed that, by choosing to adopt a parishwide attendance zone for four public schools, the Orleans Parish School Board created a classification among public schools that is rationally and logically related to a valid state interest: making the special educational programs offered at these four schools available to all students living in Orleans Parish. However, the plaintiffs argue that the effect of designating a parishwide attendance zone as the home district of these four special public schools is to partially exempt these schools from the transfer rule. Acknowledging that is so does not acknowledge a violation of equal protection because the exemption, like the overall regulatory classification created by the transfer rule, is logically and rationally related to the association's valid interest in deterring or eliminating athletic recruitment. The evidence adduced at trial demonstrates the logical and rational relationship behind such an exemption, showing first that recruiting had not been a problem at these four special public schools and indicating second that these schools likely would not experience a problem with recruiting in the future because of the special nature of the educational programs offered at these schools.

The plaintiffs argue that, because the evidence also suggested that recruiting had not been a problem at Lutheran High School in the past and was not likely to be a problem in the future, the LHSAA violated the equal protection clause of the fourteenth amendment by failing to exempt it from the transfer rule. There is no merit to this argument. The equal protection clause does not require a state to grant all the constitutionally permissible exemptions from a general statutory scheme merely because it has chosen to grant one such exception. *See generally, City of New Orleans v. Dukes*, 427 U.S. at 304–05, 96 S.Ct. at 2517–18, 49 L.Ed.2d at 517–18 (1976); *Williamson v. Lee Optical*, 348 U.S. 483, 488–91, 75 S.Ct. 461, 465–66, 99 L.Ed. 563, 572–74 (1955).

Accordingly, the district court erred in determining that the LHSAA's transfer rule, as applied in Orleans Parish, Louisiana, violated the equal protection clause of the fourteenth amendment.

The judgment appealed from is

REVERSED.