Robert KITE, as next friend of
Greg Kite, Plaintiff,

Rudy Tomjanovich and David W. Cowens'
Basketball School, Inc., and Del Harris,
as next friend of Larry Harris and Alex
Harris, Intervenors,

v.

Bailey MARSHALL, Individually and as
Director, University Interscholastic
League; Jerry S. Williams, Individually
and as Chairman, University Interscho-
lastic League; Lynn F. Anderson, Betty
Thompson, Ray Williams, Lynn W.
McGraw, and William Farney, each Indi-
vidually and as members of the Execu-
tive Committee, University Interscholas-
tic League, Defendants.

Robert H. LACKNER, Individually and
as next friend of Mark
Lackner, Plaintiff,

v.

Bailey MARSHALL, Individually and as
Director, University Interscholastic
League; Jerry S. Williams, Individually
and as Chairman, University Interscho-
lastic League; Lynn F. Anderson, Betty
Thompson, Ray Williams, Lynn W.
McGraw, and William Farney, each Indi-
vidually and as members of the Execu-
tive Committee, University Interscholas-
tic League; Raul Besteiro, Jr., Superin-
tendent of the Brownsville Independent
School District; Raul Saenz, Chairman
of the District Executive Committee 16–
AAA of the University Interscholastic
League, and its other members, Defend-
ants.

Civ. A. Nos. H–78–1171, H–80–313.

United States District Court,
S. D. Texas,
Houston Division.

July 18, 1980.

Dean H. Steffey, Houston, Tex., for plaintiff.

David C. Garza, Brownsville, Tex., for plaintiff/intervenors.

Robert Gauss, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

CIRE, District Judge.

This action presents a constitutional challenge to the "summer camp rule" adopted by the Defendant University Interscholastic League (UIL). Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1343(3). The Plaintiffs ask this Court to hold Article VIII, Section 21 of the UIL's Constitution and Contest Rules unconstitutional. That rule provides:

> "*Training Camps.*—Any student who attends a special athletic training camp in football, basketball, or volleyball shall be ineligible for a period of one year from the date he enrolls in the camp in the sport or sports for which he attended the camp. This does not apply to *bona fide* summer camps giving an overall activity program to the participants."

The action was filed in 1978 by Robert Kite, as next friend of Greg Kite. Preliminary injunctive relief was entered restraining the UIL from enforcing its summer camp rule against Greg Kite. *Kite v. Marshall*, 454 F.Supp. 1347 (S.D.Tex.1978). Interventions were allowed the following year by Del Harris, as next friend of Larry and Alex Harris, and similar injunctive relief was afforded to them. Subsequently, an identical action was filed in the Brownsville Division of this District by Robert Lackner, as next friend of Mark Lackner, and they also obtained protection from enforcement of the rule in question. The Brownsville action has been transferred to this Court and consolidated with the Kite and Harris action. Also before the Court are Rudy Tomjanovich and Dave Cowens' Basketball School, Inc., as intervenors.

The testimony in this case was confined to basketball and the facts are largely undisputed. Specialized basketball training camps for high school youth are held throughout the country during the summer months. A camp will usually last for one week. Some camps are geared toward the exceptionally talented basketball player and are attended by invitation only. Most camps are open to any young person who registers and pays the enrollment fee. The camps offer intensive training in the fundamentals of basketball and provide ample opportunity for competition and practice. The participants learn and play under the supervision of experienced coaches. In addition to training in basketball, they are exposed to youth from varying racial and ethnic backgrounds and receive discipline in terms of curfew rules, a training schedule, and supervision. Camp attendees meet and associate with new friends from diverse backgrounds.

Defendant UIL is a voluntary, non-profit association of public schools which functions as an integral part of the Division of Continuing Education of the University of Texas. All public schools in Texas are eligible for membership in the UIL. Its highest governing body is a nine-member State Executive Committee appointed by the President of the University of Texas. A Legislative Council, composed of twenty superintendents and principals elected regionally by fellow administrators, formulates policies to guide the State Executive Committee. At the local level, the governing body of the UIL is a District Executive Committee which is made up of school superintendents or their designates. The conduct of the affairs of the UIL clearly constitutes state action. *Walsh v. Louisiana High School Athletic Assn.*, 616 F.2d 152 (5th Cir. 1980); *Saenz v. University Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973).

All UIL Constitution and Contest Rules are promulgated after input from parents, coaches, principals, and school superintendents. The summer camp rule was initially passed in 1962 and was slightly revised in 1979 after a referendum prompted by this action. The rule came about in direct response to a situation created by the attendance of a Dallas high school basketball team with their coach for an entire summer at a camp in Colorado, after which the team won a state championship. As it is the

purpose of the UIL to coordinate and regulate interscholastic competition among member schools, the rule was first directed toward ensuring that high school athletes and member schools compete on a reasonably equal basis. The continued existence of the rule is, according to the UIL, also necessary to keep athletics in its proper perspective in the total high school educational program. The rule is specifically intended to eliminate excessive pressures on students to attend summer camps. The direct source of this pressure is the coaches who are themselves pressured by an overemphasis on winning exerted by parents, the community, and the news media. The UIL is thus indirectly regulating the conduct of high school coaches by making any player who attends a summer camp ineligible to compete the following year on a varsity team.

All parties in this lawsuit have expressed their main objective to be the enhancement of the total educational environment and development of high school students. The UIL Defendants believe that specialized athletic summer camps must be controlled or they can have a detrimental effect on the overall athletic/educational background of a student. The Plaintiffs, on the other hand, feel that the summer camp experience is an important facet in a child's development.

The Court has heard testimony that some camps offer a well-supervised and balanced program while others promise to deliver something they cannot. There are coaches with high ideals who consider the best interests and total development of their athletes to be their primary goal. There are, however, other coaches who value winning over all other aspects of an athletic program, causing them to succumb to the outside pressures placed upon them to do so and who, in turn, pressure their young athletes to overemphasize a sport. There are parents who guide their youngsters responsibly and there are parents who are unduly swayed by promises from camps and coaches to make their child a "superstar." The UIL feels that the summer camp rule is a necessary and appropriate means to protect high school youth from deceptive summer camps, overzealous coaches, and well-intentioned, but misled, parents.

The Plaintiffs advance, as their primary argument, a constitutional right in the family unit to decide what is best for the family and, in particular, what is appropriate and in the best interests of the minor children of the family. This right, they maintain, is found in the "family choice doctrine," described by the Plaintiffs as a fundamental right to family choice or family privacy recognized as a penumbral right under the First Amendment. Under this right, the parents feel that it is their prerogative to decide to enroll their children in specialized basketball camps during the summer. They object to the UIL rule because it, in effect, requires them to forfeit either the discipline, social interaction, and fellowship flowing from a summer basketball camp, or the self-esteem and confidence that follow young people who compete for their varsity school teams.

### The Right

Freedom of personal choice in family matters is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). The early cases of *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), recognized that the liberty protected by the Due Process Clause has "some extension to activities relating . . . to child rearing and education." *Roe v. Wade*, 410 U.S. 113, 152–153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). This right of "personal privacy" includes "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977).

The roots of the right of personal privacy have been found in various Amendments, most notably the First, Fourth and Fifth, in the "penumbras of the Bill of

Rights," and in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). As the right of personal privacy applies to the family, "constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society." *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968).

■ The First Amendment is most intimately involved in this family aspect of privacy in educational matters. In *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the right to educate one's children as one chooses is made applicable to the States by the force of the First and Fourteenth Amendments. The Supreme Court has reaffirmed this principle, noting that "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge." *Griswold v. Connecticut*, 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965). Therefore, a fundamental constitutional right exists to protect the integrity of the family and family decisions from unwarranted intrusion by the state. See also *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979); *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

■ A discussion on the rights of a parent and the family should not overlook the fact that children themselves have constitutionally protectible interests and are "possessed of fundamental rights which the State must respect." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969). In *Tinker*, the Supreme Court made it clear that the right of students to be treated as " 'persons' under our constitution" exists in school as well as during the time spent out of school. More importantly for purposes of this analysis *Tinker* recognized that the educational development of a student goes beyond the classroom and that "personal intercommunication among the students" is both inevitable and important. 393 U.S. at 511–514, 89 S.Ct. at 739–740.

■ Finally, this Court must find that the decision to send a child to summer basketball camp is important enough to warrant constitutional protection under the family's fundamental right of personal privacy. *Carey v. Population Services International*, 431 U.S. 678, 684, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). It has historically been recognized that natural bonds of affection lead parents to act in the best interests of their children. *Parham v. J. R.*, 442 U.S. 584, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101 (1979). The Plaintiff-parents in this action have expressed their belief that interscholastic athletics involve education in that experience is educational. They believe that their children benefit from meeting and interacting with other children and adults in that they are able to develop self-confidence and enhance their ability to cooperate with others. It cannot be denied that a child's development into a mature, responsible citizen is facilitated when he or she can grow in a healthy environment of competition, cooperation, fellowship, and understanding. This Court must focus on the importance of that environment and its educational attributes rather than on the relative worth of a particular basketball camp in terms of what it offers toward improvement of basketball skills. The Supreme Court has recently stated:

> ". . . an additional and more important justification for state deference to parental control over children is that '[t]he child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.' *Pierce v.*

*Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). 'The duty to prepare the child for additional obligations . . . must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship.' *Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972). This affirmative process of teaching, guiding, and inspiring by precept and example is essential to the growth of young people into mature, socially responsible citizens."

*Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 3045, 61 L.Ed.2d 797 (1979). It is, therefore, the conclusion of this Court that the summer camp decision which the Plaintiffs here seek to reserve for themselves as parents is both important and deserving of constitutional support.

### The Infringement

Having found a fundamental constitutional right, the remaining inquiries are whether or not the UIL rule in question infringes that right and, if so, whether the rule is motivated by "compelling state interests" and has been "narrowly drawn to express only [those] interests." *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973). The UIL vigorously protects any assertion that its summer camp rule prohibits a student from attending a camp or a parent from sending him to one. Defendants maintain that the only "consequence naturally flowing" from sending a child to camp is the forfeiture of eligibility to compete in varsity interscholastic athletics for one year. Defendants look to *Walsh v. Louisiana High School Athletic Assn.*, 616 F.2d 152 (5th Cir. 1980), as support for their position that their summer camp rule imposes no burden on parental choice.

The *Walsh* case involved a challenge to a rule which prohibited eligibility for interscholastic athletic competition for a one-year period to any student who matriculated at a high school outside of his home district after completing elementary or junior high school. The rule affected the eligibility of any student who attended a Lutheran elementary or junior high school and desired to attend a Lutheran high school because the only Lutheran high school in the area in question was located outside the home districts of the Lutheran elementary and junior high schools. The Fifth Circuit held that the transfer rule merely placed an "indirect and incidental" burden on the free exercise of the religious beliefs of the parents and that such burden was not an "impermissible price to exact from these parents." In support of this holding, the Court of Appeals found that the transfer rule neither prohibited a parent from enrolling his child in a Lutheran high school nor interfered with the child's ability to obtain the religious education provided by that school.

The transfer rule in *Walsh* was in no way directed toward impeding the free exercise of religion and the fact that it had some effect on that right was incidental to its purpose. The summer camp rule is, however, directly and purposefully aimed at discouraging a specific parental decision made during the summer months when the school is not acting *in loco parentis*. The interference posed by the UIL rule on that decision is neither indirect nor incidental. Exacting a penalty from a child's attendance at a summer camp constitutes a significant interference with the exercise of a parent's right to make this decision when he or she feels it to be in the best interests of his or her child.

Defendants correctly point out that the right to participate in interscholastic athletics is not a fundamental constitutional right and it falls outside the protection of due process. *Walsh v. Louisiana High School Athletic Assn.*, 616 F.2d 152 (5th Cir. 1980); *Mitchell v. Louisiana High School Athletic Ass'n.*, 430 F.2d 1155 (5th Cir. 1970). However, this case does not involve a violation of a right to play a sport. Ineligibility for interscholastic athletics is part of the penalty imposed on parents for deciding to send their child to summer basketball camp. There are other penalties involved. While an ineligible student may

still work out with the team, his ineligibility precludes him from competing on an equal basis with his fellow students. Ineligibility also means that for the prescribed period of time a student may not endeavor to achieve success in this area and feel the rewards that it brings, and may not participate in a cooperative team activity and experience the fellowship it involves. These penalties interfere with the right of a family to make educational and developmental decisions for their minor children and not with any right to participate in athletics.

While the values of parental direction of the education of their children have a high place in our society, the State also has a great responsibility for the education of its citizens and may impose reasonable regulations for the control and duration of basic education. *Wisconsin v. Yoder*, 406 U.S. 205, 213–214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). The final inquiry is, then, whether the rule being challenged is both motivated by a compelling state interest and has been narrowly drawn to express only that interest. *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973).

The UIL contends that its constitutionally permissible objective is to regulate the educational process, including interscholastic athletics, in an efficient and fair manner. Certainly, this interest is legitimate and compelling. More specifically, the UIL offered proof at trial to show that if summer camps were permissible, students and parents would be subjected to the pressure of enrolling their children in these specialized camps from coaches who feel pressure to win from the community or who have a desire to further their own economic interest by promoting these camps. Concern was also expressed regarding the possibility that the camps might be used by coaches for recruitment purposes. To regulate the conduct of these coaches, the UIL imposes a penalty on the student for his attendance.

Avoidance of peer pressure was also asserted as a legitimate reason for the summer camp rule. Regulation in this area could be never-ending. All teenagers are confronted with peer pressure of one type or another. This is one of the realities of what we know as "growing up" and it is the responsibility of parents, not the state, to cope with the problems related to these pressures.

The UIL presented testimony from high school coaches who expressed concern that if summer camps were left unregulated, they would create a situation where only children from more economically advantaged homes could attend. There are many variables present in this situation. The cost of attending a summer camp differs with each camp and many students earn their own enrollment fee. Sometimes scholarships are available. More importantly, however, limiting the opportunities that a family can offer its offspring to only those things that all families can afford is itself an unreasonable restriction on the family's right to make educational decisions for its minor children.

Therefore, the only legitimate "compelling state interest" applicable here is the control of the coaches and, in the opinion of this Court, the UIL has enacted a regulation which is broader in its scope and effect than it needs to be to further the interests involved. A state may regulate in the area of First Amendment freedoms only with "narrow specificity." *N. A. A. C. P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Statutes that affect constitutional rights must be drawn with "precision" and must be "tailored" to serve their legitimate objectives. *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972).

The UIL has failed to show that it is without any other reasonable way to achieve its goals. It presently has the most restrictive rule of any other state with a rule of this nature. The summer camp rule does not appropriately confront the problem caused by overzealous coaches. It does not regulate with the requisite "narrow specificity" to accomplish its purpose of controlling the activities of coaches and thereby promoting fair athletic competition and a balanced educational environment. This Court agrees with Judge Cowan's earlier discussion on this issue found in *Kite v.*

234

*Marshall*, 454 F.Supp. 1347, 1350 (S.D.Tex. 1978). As it presently reads, the summer camp rule constitutes an overbroad and unreasonable infringement on the right of a family to make decisions concerning the education of its children.

*Conclusion*

The constitutional right of the Plaintiffs, encompassed by the right of family privacy, to make educational decisions for their children is substantially burdened by Article VIII, Section 21 of the Constitution and Contest Rules of the University Interscholastic League. The challenged rule has not been narrowly drawn to express the UIL's interest and it is, therefore, hereby declared unconstitutional.

The motions of the UIL to dismiss Intervenor Rudy Tomjanovich and David W. Cowens' Basketball School, Inc., for lack of standing, and Plaintiff Robert Kite, as next friend of Greg Kite, on grounds of mootness, are hereby GRANTED.

Judgment shall be entered for Plaintiff/Intervenor Del Harris, as next friend of Larry Harris and Alex Harris in Civil Action No. H–78–1171, and Plaintiff Robert Lackner, as next friend of Mark Lackner, in Civil Action No. H–80–313.

It is so ORDERED.