# HARRY J. BROWN, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF JAMES BROWN, v. JACK WELLS AND OTHERS.

181 N. W. (2d) 708.

November 27, 1970—Nos. 42765, 42768.

*LeVander, Zimpfer & Tierney, Bernhard W. LeVander, Briggs & Morgan, Richard H. Kyle,* and *Samuel Hanson,* for appellant League.

*Korstad, Pokorny, Brophey & Easton* and *William B. Korstad,* for appellant Wells.

*Katz, Taube, Lange & Frommelt* and *Emanuel Z. Kopstein,* for respondent Brown.

*John G. Poust, James T. Harrington,* and *Hackbert, Rooks, Pitts, Fullagar & Poust,* for The National Federation of State High School Athletic Associations, amicus curiae.

*Korstad, Pokorny, Brophey & Easton* and *William B. Korstad,* for Minnesota Association of School Administrators and Minnesota Association of Secondary School Principals, amici curiae.

*Faegre & Benson* and *Wright W. Brooks,* for Minnesota State Athletic Directors Association and Minnesota State High School Coaches Association, amici curiae.

*Peter S. Popovich, Ivars J. Krafts,* and *Peterson & Popovich,* for Minnesota School Boards Association, amicus curiae.

MURPHY, JUSTICE.

Appeal from a declaratory judgment by defendants Jack Wells and Minnesota State High School League, who contend that the trial court erred in determining that certain eligibility rules adopted by the League are invalid.

The action was brought by Harry J. Brown, individually, and as father of James Brown, a minor, age 16 at the time of trial, who is a student at Minneapolis Roosevelt High School and a member of the school hockey team. Defendants are Wells, the Roosevelt High School principal; John B. Davis, superintendent of Minneapolis Public Schools; Minneapolis Board of Education; and Minnesota State High School League. The last-named defendant is an association of 486 eligible public high schools,

the affairs of which are managed by a Board of Control. This board has adopted rules for the purpose of governing standards of competitive athletics between the member schools.[1] Plaintiffs' action sought to enjoin defendants from enforcing rules for eligibility of hockey team members who compete in League competition. Plaintiffs contended that the rules are arbitrary, unreasonable, capricious, and "unlawfully deny constitutional rights, privileges, and immunities" to student athletes.

After hearing the evidence, the trial court granted the relief asked for and enjoined enforcement of the rules. The rules in question govern eligibility of high school students for competition in League hockey play. They provide that a student, to be eligible for competition in League-sponsored tournaments, may not (1) participate on an independent hockey team; (2) participate in any hockey games, practice, or other hockey activities between the close of one season and the start of the next; and (3) attend a hockey school, camp, or clinic, unless sanctioned by the League's Board of Control. The basic objectives which find expression in these rules are set forth in appellants' brief as follows:

"(1) Consistent with the desire of educators to provide students with a varied and comprehensive academic curriculum, one objective of the extracurricular program is to provide students with comprehensive and varied extracurricular experiences.

"(2) The schools hope, by the adoption of these rules, to protect students against pressures from their peers, their parents and community interests that would otherwise force them to specialize in limited activities.

---

[1] It is not contended that the State High School League does not possess legislative authority for its actions. Minn. St. 123.38 confers broad discretionary powers on school boards to regulate "extracurricular activities"; § 129.12 provides specific statutory authority for school boards to join the Minnesota State High School League or a similar association.

"(3)   The school program is designed to avoid professionalism or overemphasis of its extracurricular activities as compared to larger goals and responsibilities in life.

"(4)   The schools fear that without the limitations imposed by these rules the public school athlete will be subject to exploitation by outside interests in the community who are motivated by economic profits that can be gained from sports programs.

"(5)   The program has been designed to eliminate, to some extent, competitive advantages based solely on difference in economic resources.

"(6)   The educators who develop the rules also want to give athletes an opportunity to develop skills in sports in which they can participate in later years."

In a thoughtful memorandum accompanying his findings, the trial court expressed agreement with plaintiff that the rules were invalid and unenforceable and said:

"* * * [A] boy should be allowed to follow his legitimate interests without restraint or limitation beyond what is prescribed by law or is necessary to preserve the welfare of his fellow students. And whatever restraints or limitations are imposed by rule must be imposed according to a reasonable classification and equally upon all similarly situated."

The trial court recognized that while it may be true that team membership is a privilege—

"* * * it remains a privilege founded upon a right to participate in what admittedly are activities forming an integral part of the school curriculum. In this case [plaintiff minor] cannot properly be deprived of that right and the possibility of qualifying for the privilege by reason of a possible violation of rules having no directly related school purpose and not necessary to school welfare.

*    *    *    *    *

"In the alternative, the undersigned takes the view that Jim has a constitutionally protected right to participate in hockey

competition at Roosevelt High School and to compete for team membership so long as he violates no law and no rules having a proper school related purpose or calculated to protect and further the welfare of the school."

Appellants answer that the broad objectives which the rules seek to secure are fairness and equality which will permit teams from less advantaged districts to compete on equal terms with high school teams from more favored areas where the students have an opportunity for special year-round training. They point out that all members of competing high school hockey teams throughout the state conform to the same rules. If a student does not wish to conform to the rules, there is nothing to prevent him from being a member of a hockey team in a municipal or playground league or of a team sponsored by such organizations as the Y.M.C.A., nor is he prevented from engaging in intramural hockey games. He may also, if he wishes, pursue a course of training in camps, schools, or clinics for the purpose of perfecting a higher skill in the sport, but if he does so, he becomes ineligible to participate in League-sponsored tournaments unless the school, camp, or clinic is sanctioned by the League's Board of Control. It is apparent from the record that the boy's father, who is a scout for a big league hockey team, may have encouraged the boy's interests in a direction which would indicate possible preparation for a professional career in the sport.

■ In the final analysis, the court must determine if the board's action is so willful and unreasoning, without consideration of the facts and circumstances, and in such disregard of them as to be arbitrary and capricious. Where there is room for two opinions on the matter, such action is not "arbitrary and capricious," even though it may be believed that an erroneous conclusion has been reached. Smith v. Hollenbeck, 48 Wash. (2d) 461, 294 P. (2d) 921; Eureka Building & Loan Assn. v. Myers, 147 Kan. 609, 78 P. (2d) 68; Urmston v. City of North College Hill, 114 Ohio App. 213, 175 N. E. (2d) 203, appeal dismissed, 172 Ohio St. 426, 178 N. E. (2d) 36; Baisden v. Floyd County

Board of Education, 270 Ky. 839, 110 S. W. (2d) 671; 3A Wd. & Phr. (Perm. ed.) p. 567.

While the views expressed by the trial court are not without logic and reason, we must be controlled by well-established authority which recognizes that it is the duty of courts, regardless of personal views or individual philosophies, to uphold regulations adopted by administrative authorities unless those regulations are clearly arbitrary and unreasonable. Any other approach would result in confusion detrimental to the management, progress, and efficient operation of our public school system.

■ In considering the validity of the rules in question, we must at the outset view them in context with the total educational process, the responsibility for which rests with officials of our educational institutions. Those officials are apparently of the view that high schools are not obligated to prepare or train students for a career in professional athletics. We gather that they conceive their obligation to be the development of the whole person and to avoid an overemphasis on extracurricular athletic activity which may detract from the student's interest in and contribution to the total educational process. They have determined that such overemphasis on athletic activities interferes with academic goals as well as the larger goals and responsibilities of life for which the educational system seeks to prepare our citizens.

■ We cannot say that this policy is clearly wrong and, accordingly, hold that there is no basis for substituting our judgment for that of League authorities upon a question which it is authorized by law to determine. In State ex rel. Ging v. Board of Education, 213 Minn. 550, 573, 7 N. W. (2d) 544, 557, we said:

"The propriety, justice, wisdom, necessity, utility, and expediency of rules and policies adopted by a school board are exclusively matters for the board to determine. * * * The only question for the courts to decide is one of power, not of expediency or wisdom, and laws or rules will not be declared void simply because, in the opinion of the court, they are unwise or

unjust or violate the national, social, or political rights of the citizen or teacher, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the constitution."

The great weight of authority which controls our decision constrains an attempt by this court to control the discretion vested in a legally constituted educational board or to substitute our judgment for the judgment of such board upon a question which is within the sphere of its authority. State ex rel. Ging v. Board of Education, *supra*; Scott v. Kilpatrick (Ala.) 237 So. (2d) 652; Morrison v. Roberts, 183 Okla. 359, 82 P. (2d) 1023; Robinson v. Illinois High School Assn. 45 Ill. App. (2d) 277, 195 N. E. (2d) 38, certiorari denied, 379 U. S. 960, 85 S. Ct. 647, 13 L. ed. (2d) 555; State ex rel. Baker v. Stevenson, 27 Ohio O. (2d) 223, 189 N. E. (2d) 181; Board of Directors of Independent School Dist. of Waterloo v. Green, 259 Iowa 1260, 147 N. W. (2d) 854; State ex rel. Ohio High School Athletic Assn. v. Judges of Court of Common Pleas, 173 Ohio St. 239, 181 N. E. (2d) 261; Coggins v. Board of Education, 223 N. C. 763, 28 S. E. (2d) 527; Epperson v. Arkansas, 393 U. S. 97, 89 S. Ct. 266, 21 L. ed. (2d) 228.

Some questions have been raised with reference to the procedural posture of this action which we need not decide. Our decision here is limited to a consideration of the rules as they apply to the minor plaintiff's eligibility for hockey competition. It is observed, however, that this action may have been prematurely brought since plaintiffs sought to strike down the League's rules rather than to apply to the League or school board for such relief or modification as might permit the minor plaintiff and those in the same situation to accommodate their activities to the broad policy which the League seeks to accomplish. The youth has not as yet been declared ineligible for tournament competition or other League-sponsored interscholastic activities, nor is the record clear as to the precise nature and extent of the breach of the League's rules or possible disqualification. He, and others who

are similarly situated and may have to some extent engaged in extracurricular activities inconsistent with the board's policy, may, if they wish to compete in League-sponsored competition, apply through proper administrative channels for clarification of eligibility. Courts should not be called upon to arbitrate the reasonableness of League rules unless objectors are prepared to demonstrate that they are not supported by reason or adopted in good conscience. Certainly, plaintiffs have failed to establish that here.

Reversed.