In re CHARGES OF UNPROFESSIONAL CONDUCT CONTAINED IN PANEL FILE 98–26.

Nos. C7–98–2122, C4–98–2062.

Supreme Court of Minnesota.

July 15, 1999.

Michael H. McGlennen, Michael Holland, Kelly Anne Madden, William E. McGee, Chief Public Defender, David

Knutson, First Asst. Public Defender, Minneapolis, for petitioner.

William J. Wernz, Dorsey & Whitney LLP, Minneapolis, for respondent.

## OPINION

PER CURIAM.

■ This matter is before us on a petition by complainants to review a decision of a panel of the Lawyers Professional Responsibility Board (Panel) issuing a private admonition to respondent attorney for respondent's race-based misconduct. Race-based misconduct by an attorney is an inherently serious matter. Because the Panel's issuance of a private admonition stemmed from its conclusion that respondent's conduct was "non-serious," we reverse. However, our independent review of the circumstances surrounding respondent's misconduct, together with the various mitigating factors present in this case, lead us to conclude that private admonition is the appropriate discipline for respondent.

The essential facts of this case are undisputed. Respondent was admitted to practice law in Minnesota in 1990. Since that time she has worked as a prosecutor in several Minnesota counties. In 1998, she took a position as a special assistant county attorney in an office and county where she had not previously worked.

Among the first cases assigned to respondent was a criminal matter involving W.M., an African–American male charged with two counts of felony robbery of a Caucasian couple. According to the complaint, W.M. had approached the couple in a restaurant parking lot and "asked them for some money, suggesting that he needed a ride some place." When the couple refused to give W.M. money, he became verbally abusive and "at one point reached around with one of his hands to the back of his pants and stated 'Man, I ought to' as if

he may pull out a weapon." The couple told W.M. that they did not have any money but that they had a checkbook. W.M. then "directed" them to write him a check for $15 dollars and the female member of the couple did so. W.M. and the couple then went into the restaurant where W.M. tried to cash the check. W.M. implied that "if [the couple] called the police, he would do something to them." W.M. eventually left, after which the couple "became very emotional and told restaurant employees that they had been robbed." After returning home, the couple reported the incident to the police. Based on these facts, W.M. was charged with simple robbery pursuant to Minn. Stat. § 609.24 and second-degree aggravated robbery pursuant to Minn.Stat. § 609.245, subd. 2 (1998). To charge a person with second-degree aggravated robbery, the state must have probable cause to believe that the person committed robbery while implying by word or act that he possessed a dangerous weapon and using or threatening the imminent use of force. *See* Minn.Stat. § 609.245, subd. 1.

The county attorney's office initially assigned the W.M. case to another prosecutor in the office. That prosecutor had at least one discussion about the case with K.M., the public defender assigned to represent W.M. During that discussion, K.M. indicated to the prosecutor that she believed W.M.'s race had played a part in the charges that had been brought against him and that she was thinking about bringing in an African–American public defender from another county to assist her in trying the case. Although the prosecutor inquired as to the basis for K.M.'s belief that race was an issue, K.M. did not elaborate on her position. After meeting with K.M., the prosecutor drafted a memorandum to the case file stating:

[K.M.] is the attorney for the defendant. It appears her only issue in this case is one of race which I do not understand. Apparently, she thinks there is something to the fact that officers ques-

tioned another African–American male about the robbery. The two victims viewed that individual and positively said he was not the robber. They later ID'd the defendant from a photo line-up as did the other witnesses. She plans on having an [sic] token African–American public defender try this case with her. Frankly, I am appalled. Unless I have missed something big in this file, there is no basis for her position. It also does not go to the elements of proof in this case. If there is any way to object to it, we should.

The original prosecutor in the W.M. case left the county attorney's office in March 1998. Respondent was hired to assist the county attorney's office in the temporary absence of that prosecutor and another attorney. In total, respondent assumed responsibility for more than 50 cases. Before the original prosecutor left, she briefly informed respondent about the facts of the case and told her that K.M. considered race an issue and was thinking of bringing in an African–American co-counsel from another county. After receiving the W.M. file, respondent called K.M. to discuss the case. She did not speak directly with K.M but left her a voice mail message.

Approximately 1 month after being assigned the case and 2 weeks prior to W.M's trial, respondent prepared a motion in limine asking for rulings with respect to several evidentiary issues. The portion of the motion specifically at issue in the present case (Paragraph 2) asked:

> For an Order from this Court prohibiting counsel for the defendant to have a person of color as co-counsel for the sole purpose of playing upon the emotions of the jury.

Prior to bringing the motion, respondent's only research regarding the matter was a review of the Minnesota Rules of Evidence concerning relevance. She had spoken with her supervisor about bringing a motion to require K.M. to make an offer of proof on the race issue and mentioned that K.M. was thinking of bringing in an

African–American co-counsel. However, they did not specifically discuss a motion to exclude such co-counsel.

The motion in limine was filed on a Thursday. On the following Monday, respondent's supervisor discussed the motion with her. At the Panel hearing respondent testified, "[t]hat was the first time that it dawned on me. I looked at it from the big picture and I realized what I had done and immediately I told him I'll withdraw the motion and so I pulled the motion. I deleted Paragraph 2." That same morning, respondent called K.M. and left a voice mail message apologizing for Paragraph 2. Later that week, respondent and K.M. met in the courtroom on a different matter and respondent again apologized for including Paragraph 2 in her motion. Respondent also apologized to M.H., the attorney whom K.M. had contacted about becoming co-counsel on the W.M. case. Since this incident, Respondent has increased her efforts to question and review the propriety of all materials she submits to the court to ensure that such misconduct is not repeated.

K.M., M.H., and M.H.'s supervisors filed complaints against respondent with the Director of the Office of Lawyers Professional Responsibility (Director). The Director determined that there was probable cause to believe that the facts alleged in the charges did occur and that respondent's conduct violated the following Minnesota Rules of Professional Conduct: Rules 3.1, which prohibits filing frivolous pleadings; Rule 4.4, which prohibits intentionally burdening a third party without substantial purpose; and Rule 8.4(d), which prohibits engaging in conduct prejudicial to the administration of justice of the Minnesota Rules of Professional Conduct. Concluding that public discipline was warranted, the Director submitted the case to the Panel for a hearing.

In a unanimous decision, the Panel determined that respondent had violated Minn. R. Prof. Conduct 8.4(d). Rather

than recommend public discipline, however, the Panel issued a private admonition to respondent pursuant to Rule 9(j)(iii) of the Rules on Lawyers Professional Responsibility (RLPR), which grants a panel authority to privately admonish attorneys whose conduct, although "unprofessional" is determined to be "of an isolated and non-serious nature." In determining that respondent's conduct was "isolated and non-serious," the Panel took into consideration the facts that respondent had committed a single violation, had sincerely apologized to K.M. and M.H., and was remorseful for her actions.

Complainants petitioned this court for review of the Panel's decision. They argued that the Panel erred in concluding that respondent's conduct was "non-serious" and thus deserving of private admonition rather than public reprimand. We granted the petition to determine "whether the panel's decision was arbitrary, capricious, or unreasonable, and specifically, whether respondent's conduct was serious."

## I.

After holding a hearing on charges of unprofessional conduct, a panel has three options: (1) "determine that there is not probable cause to believe that public discipline is warranted"; (2) determine that "public discipline is warranted [and] instruct the Director to file in this Court a petition for disciplinary action"; or (3) issue a private admonition to the attorney. Rule 9(j), RLPR. Under the plain language of the rule, a panel may issue a private admonition only if the panel "concludes that the attorney engaged in conduct that was unprofessional but of an isolated and *non-serious* nature." Rule 9(j)(iii), RLPR (emphasis added).

█ █ A complainant's right to petition this court for review of a panel's decision is governed by Rule 9(l), RLPR. Upon review granted pursuant to such a petition, "if this Court finds that the Panel acted arbitrarily, capriciously, or unreasonably"

in reaching its decision, we may "remand the matter to the same or a different Panel, direct the filing of a petition for disciplinary action, or take any other action as the interest of justice may require." Rule 9(l), RLPR. A decision is arbitrary and capricious if the decision maker relied on factors it is not permitted or intended to consider, "entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before [the decision maker] or is so implausible that it could not be ascribed to a difference in view or the product of [the decision maker's] expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "Where there is room for two opinions on the matter, [a decision] is not 'arbitrary and capricious,' even though it may be believed that an erroneous conclusion has been reached." *Brown v. Wells,* 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970).

█ Even under this deferential standard of review, we cannot affirm the Panel's conclusion that respondent's race-based misconduct was non-serious. Racism, whether it takes the form of an individual's overt bigotry or an institution's subtle apathy, is, by its very nature, serious. In 1993, our own *Task Force on Racial Bias in the Judicial System* wrote that:

> In the specific case of African Americans, although the justice system is no longer made to enforce the ultimate social control of slavery or the complex codes of legal segregation that took its place, the justice system still finds itself being used as a powerful tool of the pervasive prejudice and the subtle, often elaborately camouflaged discrimination that still deeply scars our national life.

Minnesota Supreme Court Task Force on Racial Bias in the Judicial System, *Final Report* 5 (1993). When any individual engages in race-based misconduct it under-

mines the ideals of a society founded on the belief that all people are created equal. When the person who engages in this misconduct is an officer of the court, the misconduct is especially troubling. Left unchecked, such racially-biased actions as we have here not only undermine confidence in our system of justice, but also erode the very foundation upon which justice is based.

Respondent's lack of malice and her apologies and remorse do not transform her misconduct from serious to non-serious. Regardless of her subsequent actions, respondent brought a motion that sought to prohibit an attorney from participating in a case based solely on the color of his skin. A counsel's race should never be used as a basis for calling for or placing any limits on that counsel's participation in any court proceedings. Respondent's motion could reasonably be interpreted as implying that an attorney of color would have no legitimate use on the case other than to arouse the passions of the jury. Moreover, respondent's motion came precariously close to infringing on W.M.'s right to be represented by counsel of his choice. Such conduct, even if grounded in ignorance and poor judgment rather than malice, is unacceptable and inherently serious. Accordingly, we hold that it was arbitrary, capricious, and unreasonable for the Panel to conclude that respondent's race-based misconduct was non-serious. Because the rules empower panels to issue private admonitions only for non-serious violations, the private admonition issued by the Panel in this case cannot stand and, therefore, we reverse.

## II.

A determination that the Panel acted arbitrarily, capriciously, and unreasonably, however, does not necessarily conclude our review of this matter. In a case such as this, where review is instigated by a complainant's petition, we are expressly authorized to "take any * * * action as the interest of justice may require." Rule 9(l),

RLPR. Pursuant to that authority, we shall now determine the appropriate discipline for respondent's misconduct.

We alone have the final responsibility to determine the appropriate discipline to be imposed on an attorney who violates the rules of professional conduct. *In re Disciplinary Action Against Selmer*, 529 N.W.2d 684, 687 (Minn.1995). Unlike the Panel, our authority to determine the appropriate form of discipline is not subject to the limits of Rule 9(j)(iii), RLPR. Rather, "[t]he discipline to be imposed depends on the specific facts of the misconduct, together with mitigating circumstances." *Selmer*, 529 N.W.2d at 687. "The inquiry into the appropriate measure of discipline for an attorney is necessarily subjective. * * * [Thus] the facts of each individual case must be carefully examined." *In re Disciplinary Action Against Boyd*, 430 N.W.2d 663, 664–65 (Minn.1988). Factors relevant to this decision include "(1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Disciplinary Action Against Madsen*, 426 N.W.2d 434, 436 (Minn.1988).

Here, without question, respondent displayed a disturbing lack of judgment regarding racial issues. However, respondent's misconduct has not gone unchecked. The Director submitted the case for Panel review, which resulted in the issuance of a private admonition to respondent. While we stress the unacceptable nature of respondent's actions, we also note with favor the sincerity of respondent's remorse after she recognized her misconduct. Even complainants concede that respondent's misconduct did not stem from any malicious intent to discriminate or do harm. They, in fact, characterize respondent's action as "an isolated act of thoughtlessness." The record shows that when she filed the motion, respondent was new to the office and did not personally know K.M. or M.H. Her familiarity with W.M.'s case came primarily from a file in

which the previous prosecutor had openly questioned K.M.'s motives. At the Panel hearing, respondent testified that her intent in filing the motion was to have K.M. "explain why she was bringing this person in" and that her motivation was to ensure a "fair trial" and to prevent "something [from being] injected into the system that didn't appear to be appropriate." Respondent testified that it was not until after she had filed the motion that she realized what a truly inappropriate and offensive motion she had made.

The record in the present case also indicates that once respondent realized the impropriety of her motion, she took immediate action to mitigate the consequences of her misconduct. On her own accord, she promptly withdrew Paragraph 2 from her motion and apologized to both K.M. and M.H. Complainants admit that respondent's apologies were sincere. Significantly, because of respondent's timely withdrawal of Paragraph 2, W.M. was not deprived of any right of representation and M.H. was not precluded from assisting in W.M.'s defense. Since the incident, respondent has repeatedly expressed remorse over her actions, has apologized and has vowed that such a lapse of judgment will not happen again, and, to that end, has taken precautions to ensure that her error is not repeated. Moreover, respondent has no history of prior discipline and has cooperated with the Director's investigation of this incident.

Given these mitigating factors, we believe that no further good would come from remanding this case for further Panel proceedings or from directing the filing of a petition for further disciplinary action. "The purpose of attorney discipline is not to punish the attorney, but rather to protect the courts, the public and the legal profession, as well as to guard the administration of justice." *Madsen,* 426 N.W.2d at 435. From the record, we are confident that respondent has learned from this experience and will not repeat this misconduct. In light of these mitigating factors

and in the interest of justice, we order that respondent is hereby privately admonished for her misconduct.

So ordered.

LANCASTER, J., took no part in the consideration or decision of this case.