In re CHARGES OF UNPROFESSION- AL CONDUCT CONTAINED IN PANEL CASE NO. 15976.

Nos. C6–02–139, C3–02–227.

Supreme Court of Minnesota.

Nov. 27, 2002.

Michael J. Hoover, Minneapolis, for Appellant.

Patrick R. Burns, Senior Assistant Director Office of Lawyers Professional Responsibility, St. Paul, for Respondent.

Kristyn Aceto Garofalo, Assistant Attorney General, St. Paul, for Petitioner.

Daniel Stuart Goldberg, Hedin & Goldberg, P.A., Jeanette A. Frederickson, Frederickson & Associates, Minneapolis, for Amicus Curiae Pacer Center, Inc.

Luther A. Granquist, Minneapolis, for Amicus Curiae Minnesota Disability Law Center.

## OPINION

PER CURIAM.

Respondent represented a disabled plaintiff in a personal-injury action. During the jury trial, respondent moved for a mistrial advocating on behalf of his client that the presence of the court's severely disabled law clerk diminished his client's ability to receive a fair trial. At the conclusion of trial, respondent moved for a new trial, once again objecting to the presence of the law clerk in the courtroom. Judge Franklin J. Knoll (complainant) filed a complaint with the Office of Lawyers Professional Responsibility (OLPR) asserting that respondent's conduct violated the Minnesota Rules of Professional Conduct. The Director issued an admoni-

tion to respondent. Pursuant to Rule 8(d)(2)(iii) of the Rules on Lawyers Professional Responsibility, respondent requested that a Lawyers Professional Responsibility Board Panel (Panel) review the matter. After a hearing, the Panel concluded that respondent violated Minn. R. Prof. Conduct 3.1 and 8.4(d) and amended and affirmed the Director's admonition pursuant to 8(d)(2), RLPR. Complainant filed a petition for discretionary review under 9(*l*), RLPR. As a matter of right, respondent also appealed the Panel's amended admonition. We granted complainant's petition for discretionary review and ordered consolidation of the two cases. We affirm.

The facts are undisputed. Respondent currently practices law in St. Paul, Minnesota, and has been a member of the Minnesota bar since October 15, 1987. Respondent has not previously been subject to any disciplinary proceedings. In March 2000, respondent represented a client in a personal-injury action in Hennepin County District Court.

Respondent's client sustained serious permanent physical injuries that disabled him when a school bus hit and ran over him with a rear tire while he was riding a bicycle in South Minneapolis. The accident crushed his pelvis, and left him in a coma for approximately 1 month. By the time of trial, the client was able to walk with the assistance of a cane. Before the accident, the client was employed as a checker and bagger at a grocery store and as a greeter at a restaurant. His employment background consisted of similar unskilled and physical labor positions. At trial, the client asserted that his permanent injuries prevented him from performing physical-labor-type jobs and that he did not qualify educationally or intellectually for other types of employment. Therefore, he sought damages for future loss of wages and future diminished earning capacity.

Complainant presided over the personal-injury action and assigned one of his two law clerks to assist with the action. The clerk assigned by complainant to assist in this case is physically disabled. He is paralyzed from his mouth down and has difficulty breathing and speaking. He performed his duties as a law clerk with the assistance of a large wheelchair, respirator and full-time attendant. The disabled clerk was present in the courtroom at the outset of the personal-injury trial, assisted with jury selection, and remained in the courtroom throughout the trial.

On the first day of trial, respondent's client expressed reservations about his ability to receive a fair trial grounded on the fact that if the disabled law clerk continued to work in the courtroom, the jury would compare the clerk who was more severely disabled yet able to work, to himself, who was less severely disabled and claiming an inability to work. Later that same day respondent made an oral motion outside the presence of the jury, "for a mistrial and another panel of jurors without your law clerk present or in the alternative that this case be assigned to another [j]udge." Respondent gave the following explanation for his motion:

> I will be asking the jury to award future loss of wages, future diminished earning capacity. I do not believe a jury when they look at the comparison with your law clerk, who's obviously gainfully employed, working in the courtroom under great handicap and great duress, will be able to award anything to my client under those circumstances.

Respondent stated that he brought the motion with "great reluctance" and acknowledged that the motion was "outrageous and distasteful for the [c]ourt." He did not support his motion with any legal

authority. Stating that the motion was "un-American," complainant denied the motion.

The jury found in favor of the defendant on the issue of liability. Subsequently, respondent brought a written motion for a new trial. Respondent asserted the presence of the disabled clerk in the courtroom as one basis for the motion. Respondent again stated that his objection to the clerk's presence in the courtroom was made with "the greatest reluctance," but he argued that the jury would compare the disabilities of the law clerk with the injuries of his client. Again, respondent failed to cite any legal authority in support of his position.

Complainant filed a complaint with the OLPR. Complainant argued that respondent's objection to his clerk's presence in the courtroom violated Rules 3.1, 4.4, 8.4(d), 8.4(g) and 8.4(h) of the Minnesota Rules of Professional Conduct. The matter was assigned to the Second District Ethics Committee for investigation, which referred the matter to the Director. The Director issued an admonition to respondent. Pursuant to Rule 8(d)(2)(iii), RLPR, respondent requested that a Lawyers Professional Responsibility Board Panel review the matter.

The Panel held a hearing. Addressing his reasons for bringing the motion for a mistrial respondent stated, "I was thinking of fairness and I was thinking of my client and his wishes with respect to at least raising the issue to the judge." He also asserted that his duty to ensure his client received a fair trial overrode his reluctance to bring the motion. Finally, he stated that he would not have made the objection in a case that did not involve disability issues that might lead to similar comparisons.

Responding to questions concerning the written motion for a new trial, respondent maintained that he only raised the issue of the disabled clerk's presence in the courtroom to preserve the argument for appeal. Respondent also asserted that he did not cite to any legal authority in the motion because his firm was unable to locate any relevant law and the issue was one of first impression. Respondent also acknowledged that he never made any formal apologies to the disabled clerk, but argued that contact with the clerk would have been inappropriate once the complaint was filed with the Director.

The Panel concluded that respondent violated Minn. R. Prof. Conduct 3.1 and 8.4(d) when he brought the written motion for a new trial and issued an amended admonition to respondent. Addressing first the motion for a mistrial, the Panel found that although the motion was "ill-considered," respondent's conduct in bringing the motion did not violate the Minnesota Rules of Professional Conduct. Turning to the subsequent written motion for a new trial, the Panel found that the objection to the disabled clerk's presence in the courtroom was improper and violated Minn. R. Prof. Conduct 3.1 and 8.4(d). The Panel found that respondent had "ample opportunity" to find legal authority to support the motion and to reflect upon the appropriateness of the motion. Further, the Panel concluded that respondent's position was unsupported by legal authority; thus, he had "no reasonable expectation that his motion would prevail."

On appeal, we are presented with two issues: (1) Whether the Lawyer's Professional Responsibility Board Panel's conclusion that respondent violated the Minnesota Rules of Professional Conduct is clearly erroneous? (2) If respondent did violate the Minnesota Rules of Professional Conduct, did the Panel act arbitrarily, capriciously, or unreasonably in affirming the admonition issued by the Director?

■ Respondent contends that his conduct did not violate Rules 3.1 or 8.4(d). We will reverse the decision of the Panel only if we conclude that the Panel's decision was clearly erroneous. *In re Lawyers Professional Responsibility Board Panel No. 94–17,* 546 N.W.2d 744, 746 (Minn. 1996); *In re Admonition issued to X.Y.,* 529 N.W.2d 688, 689–690 (Minn.1995).

Under Rule 8.4(d), it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." The Panel found that respondent violated Rule 8.4(d) by bringing the written motion for a new trial. We have concluded that similar race-based misconduct violates Rule 8.4(d). *In re Panel File 98–26,* 597 N.W.2d 563 (Minn. 1999).

In *In re Panel File 98–26,* we issued an admonition to a prosecutor for making a motion to exclude a public defender from participating in a trial based solely on his race. *Id.* at 569. After accepting a position as a special assistant county attorney, the prosecutor was assigned to take over the prosecution of an African–American male charged with two counts of felony robbery of a Caucasian couple. *Id.* at 565. The prosecutor previously assigned to the case left a memorandum in the case file explaining that the public defender felt race was an issue in the case and planned to recruit an African–American public defender to try the case. *Id.* at 565–66. Subsequently, the prosecutor brought a motion in limine requesting:

> [A]n Order from this Court prohibiting counsel for the defendant to have a person of color as co-counsel for the sole purpose of playing upon the emotions of the jury.

*Id.* at 566. Two workdays after filing the motion, the prosecutor realized the gravity of her mistake, withdrew the motion, and apologized to both public defenders. *Id.*

She also implemented measures to prevent reoccurrence of the misconduct. *Id.* After a hearing, a Panel concluded that the prosecutor violated Minn. R. Prof. Conduct 8.4(d), but that her conduct was "isolated and non-serious" and therefore issued a private admonition. *Id.* at 566–67.

On review, we rejected the Panel's determination that the prosecutor's conduct was "non-serious" and unequivocally held that race-based misconduct is inherently serious. *Id.* at 567. Moreover, we emphasized that race-based misconduct committed by an officer of the court is especially destructive because it "undermine[s] confidence in our system of justice [and] erode[s] the very foundation upon which justice is based." *Id.* at 568. We concluded that the prosecutor's remorse and lack of malice did not transform the conduct from serious to non-serious. *Id.* at 568. Thus, because private admonitions can only be issued by the Panel for "non-serious isolated" violations, we reversed the private admonition issued by the Panel. *Id.* at 567–68. We next determined the appropriate discipline under Rule 9(*l*), RLPR, which authorizes the court to "take any * * * action as the interest of justice may require." Acknowledging that the prosecutor demonstrated remorse, lacked malicious intent and took remedial actions, we issued a private admonition. *Id.* at 568–69.

■ In *In re Panel File 98–26,* we emphasized that race should never be used as a basis for limiting an attorney's participation in a court proceeding. *Id.* at 568. We extend this holding to encompass situations where disability is used to limit a court employee's participation in a court proceeding. Neither race nor disability should be used as a means of limiting participation in our courts. Minnesota has adopted legislation prohibiting discrimination against individuals with disabilities.

*See* Minnesota Human Rights Act (MHRA), Minn.Stat. §§ 363.01–363.20 (2000). The MHRA prohibits discrimination against individuals with disabilities in employment, housing, public accommodations, public services and education; the MHRA also prohibits race-based discrimination in these same areas. Minn.Stat. § 363.12 (2000). Minnesota treats race-based discrimination and disability-based discrimination equally under the MHRA. Therefore, we conclude that the Panel's determination that respondent violated Rule 8.4(d) is not clearly erroneous.

The Panel also found that respondent violated Minn. R. Prof. Conduct 3.1 by bringing the written motion for a new trial because he failed to support his position with legal authority. Rule 3.1 provides in relevant part:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

While we are concerned that over zealous application of Rule 3.1 may hinder the development of law by discouraging attorneys from bringing issues of first impression or good faith arguments for the extension, modification or reversal of existing law, we need not reach this issue because we have already determined that respondent's conduct violated Rule 8.4(d).

▄▄▄ Having affirmed the Panel's determination that respondent violated the Minnesota Rules of Professional Conduct, we must next determine whether the Panel issued the appropriate discipline. Complainant sought discretionary review of the Panel's disposition under 9(*l*), RLPR. Upon review, if we find the Panel acted arbitrarily, capriciously, or unreasonably, we may "remand the matter, to the same or a different Panel, direct the filing of a petition for disciplinary action, or take any other action as the interest of justice may require." 9(*l*), RLPR. Here, the Panel affirmed the admonition issued by the Director, and issued an amended admonition pursuant to 8(d)(2), RLPR. Rule 8(d)(2) provides that an admonition may be issued only when a lawyer's unprofessional conduct is of an "isolated and non-serious" nature. Thus, we must determine whether the Panel's conclusion that respondent's misconduct was "isolated and non-serious" was arbitrary, capricious and unreasonable. "Where there is room for two opinions on the matter, [a decision] is not 'arbitrary and capricious,' even though it may be believed that an erroneous conclusion has been reached." *Brown v. Wells*, 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970).

The circumstances of this case support the Panel's determination that respondent's misconduct was an isolated incident. Respondent made two arguments during the same trial that related to the same issue. There were no other incidents of misconduct. Thus, we agree with the Panel that this was an isolated incident.

Citing to *In re Panel File 98–26*, complainant argues that respondent's disability-based conduct was inherently serious and a more severe sanction is justified. Under state and federal statutes, it is an objective to end disability-based discrimination and to integrate persons with disabilities so they can access employment opportunities, education and places of public accommodation. A disabled court employee has a right to perform his job in the courtroom. But here we have the perceived rights of two disabled persons potentially in conflict with one another. Respondent's client also suffers from a disability. Respondent's client was concerned that the jury would compare the

law clerk's more severe disability with his less severe disability and that comparison would unduly influence the jury to decide against him on his claims and deprive him of a fair trial. Ironically, the concern of respondent's client, as argued by respondent, was not that the law clerk's disability prevented him from capably performing his job, but that the law clerk's demonstrated capability would diminish the client's disability claim. Respondent's motion can be viewed as an inappropriate attempt to address the respective rights of two disabled persons, rather than elevating the rights of one over the rights of another. If respondent was concerned that the jury might make improper comparisons, respondent could have addressed those concerns during voir dire. Nonetheless, when viewed in context, we conclude that the Panel did not act arbitrarily, capriciously or unreasonably by finding that respondent's conduct in this particular situation was non-serious.

Any discriminatory effect from the motion was indirect because respondent did not exercise any authority or control over the disabled clerk. In contrast, the prosecutor in *In re Panel File 98–26* misused the power of the state by interfering with a defendant's right to counsel in seeking to prevent the public defender from representing the defendant based solely on the public defender's race. *See* 597 N.W.2d 563. Taking into consideration the unique circumstances of this case, we conclude that the Panel did not act arbitrarily, capriciously, or unreasonably by issuing an amended admonition to respondent.

So Ordered.