In re CHARGES OF UNPROFESSION-
AL CONDUCT FILED JANUARY 20,
2005 IN PANEL CASE. NO. 19453.

No. A04–501.

Supreme Court of Minnesota.

Jan. 20, 2005.

Paul A. Sortland, Sortland Law Office, Minneapolis, MN, for Panel Case No. 19453.

Kenneth L. Jorgensen, Director, Cassie Hanson, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Office Lawyers Professional Responsibility.

## OPINION

PER CURIAM.

Appellant was admitted to practice law in Minnesota on September 29, 1978. On April 2, 2003, the Office of Lawyers Professional Responsibility (OLPR) received a complaint from one of appellant's clients, Z.S., regarding the representation she received from appellant. In response to the complaint, the Director of the OLPR initiated an investigation. *See* Rule 8(a), Rules on Lawyers Professional Responsibility (RLPR). Based on his findings, the Director issued an admonition to appellant on October 31, 2003. Thereafter, appellant demanded that the Director present the charges against him to a panel for de novo consideration. *See* Rule 8(d)(2)(iii), RLPR. A panel was convened in accordance with Rule 9, RLPR. After a hearing on the matter, the panel concluded that appellant had engaged in unprofessional conduct and affirmed the admonition issued by the Director, and appellant appealed to this court. *See* Rule 9(j)(2), (m), RLPR.

The complaint that led to the admonition arose out of appellant's representation of Z.S. between February 2000 and May 2003. Z.S. contacted appellant to seek advice regarding an attorney malpractice claim against an attorney who represented her in a separate matter. Appellant and Z.S. had a telephone conversation in February 2000 to discuss the malpractice claim. As a result of that conversation, appellant agreed to review the case for a retainer of $5,000. Z.S. paid appellant the $5,000 retainer on February 18, 2000.

On March 10, 2000, Z.S. sent appellant an email inquiring into appellant's progress on her case. On March 11, 2000, appellant responded that he continued to believe there was merit to Z.S.'s claim but needed additional time to perform a complete analysis, and would have a complete analysis prepared within one week. Appellant did not complete his analysis within that period. By letter dated July 7, 2000, appellant notified Z.S. that he had not completed the analysis of her claim but that he would do so when he returned from a two-week vacation. In August 2000 appellant returned from his vacation, prepared a draft analysis of Z.S.'s claim, and concluded that the claim was almost certainly not viable. Appellant did not, however, inform Z.S. that he had completed the preliminary analysis or that he had altered his view of her case.

Appellant testified before the panel that his practice became increasingly busy in the fall of 2000 and that he put Z.S.'s case on the "back burner" because the statute of limitations would not run out for four more years. Appellant also testified that in the early fall of 2000, several billing statements that he mailed to Z.S.'s address on record were returned by the post office as undeliverable. Appellant testified that when the billings were returned he assumed that Z.S. had moved to Florida based on an earlier conversation in which Z.S. mentioned that she might be moving to Florida. At that point, appellant chose

not to locate Z.S. because he was concerned about the cost of hiring a private investigator to contact her and because he was certain that she would eventually contact him.

Although Z.S. had not moved to Florida, she had moved from her address in South Minneapolis to a new address in Plymouth, Minnesota. In December 2000, Z.S. relocated again, but remained in Plymouth. Z.S.'s email address remained the same after each move. Appellant made no attempt to contact Z.S. by email or otherwise.

Appellant and Z.S.'s next contact occurred in May 2002 when Z.S. contacted appellant to provide a change of address and to check on the progress of her case. In response, appellant sent Z.S. a letter dated May 13, 2002, confirming receipt of the change of address, apologizing for the delay in communicating with her, and notifying her that an analysis had been conducted that resulted in "some difficulties that I wanted to talk with you about." The letter was not specific about what those difficulties were or when Z.S. should contact appellant to discuss the difficulties mentioned. The letter again indicated that appellant would prepare an analysis for Z.S. shortly.

Between February and August 2000, appellant charged $3,375 to Z.S.'s trust account for the work conducted on her case. The record reveals that the next and final billing to Z.S.'s account was in October 2002 for $750.

Appellant and Z.S. did not communicate again until Z.S. contacted appellant by email on February 10, 2003, to deliver a new change of address and to inquire as to the progress of the analysis on her case. Appellant testified that Z.S. was very anxious at the time because she feared that the statute of limitations was approaching that summer. Appellant replied to Z.S. by

email on February 13, 2003, and informed her that his report was near completion when his office misplaced her earlier change of address. He also told Z.S. that he would email her a copy of a report early the following week.

On February 21, 2003, appellant emailed Z.S. a copy of his August 2000 draft opinion. In the email, appellant explained that the analysis had been conducted "some time ago" and that his attention had been required on more urgent client matters that limited the amount of time he was able to spend analyzing Z.S.'s claim. Appellant again confirmed that a final report would be forthcoming.

Z.S. attempted to contact appellant by email on February 28, March 15, and March 21, 2003. Appellant did not respond to the February and March 2003 emails. On March 27, 2003, Z.S. left a telephone message for appellant at his office. Appellant responded to Z.S.'s telephone call by email that same day. In his email, appellant apologized for the delay, citing his involvement in demanding litigation cases. He also informed Z.S. that her claim was not economically viable, but that he would consider pursuing the claim if Z.S. agreed to either pay an hourly rate or provide him with a substantial retainer to compensate for the likelihood that the claim would not be successful.

After receiving the March 27 email from appellant, Z.S. filed a complaint with the OLPR on April 2, 2003. Appellant submitted his reply to the complaint on May 2, 2003, and included a final analysis of Z.S.'s case. Appellant has never provided a final analysis directly to Z.S. On May 11, 2003, Z.S. received a letter of withdrawal from appellant and a check for $875, the balance remaining in her trust account.

This appeal presents the following two issues: (1) whether the facts support the

finding of a violation of Rules 1.3[1] and 1.4[2] of the Minnesota Rules of Professional Conduct; and (2) if the facts support a finding of a violation, whether the admonition issued by the Director is an appropriate disciplinary sanction.

## I.

■■■■ This court has the final responsibility for determining the appropriate discipline for an attorney's violation of our professional conduct rules. *In re Charges of Unprofessional Conduct Contained in Panel File 98–26*, 597 N.W.2d 563, 568 (Minn.1999). In doing so, we weigh: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; and (3) the potential harm to the public, to the legal profession, and to the administration of justice. *See In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988). Sanctions are imposed according to the unique facts of each case. *See id.*

We have previously held that an attorney's "failure to communicate adequately the status of the [client's] claim, his misrepresentations concerning their status, and his failure to advise his client of the reasons for the delay in resolving the claim * * * violated Rules 1.3 and 1.4(a), Minn. R. Prof. Conduct." *In re Disciplinary Action Against Shaughnessy*, 467 N.W.2d 620, 621 (Minn.1991). We have also held that a violation of Rules 1.3 and 1.4 occurs when an attorney neglects a client matter for an extended period of time and fails to communicate adequately with the client. *In re Disciplinary Action Against Kolbinger*, 417 N.W.2d 615, 616 (Minn.1988).

Admonition is the least severe disciplinary sanction available. Here, the panel affirmed the Director's recommendation that an admonition was the appropriate form of discipline because the conduct was isolated and nonserious. We have held that when a panel has affirmed the Director's issuance of an admonition due to the isolated and nonserious nature of the misconduct, this court must determine whether the panel's conclusion was arbitrary, capricious, or unreasonable. *In re Charges of Unprofessional Conduct Contained in Panel Case No. 15976*, 653 N.W.2d 452, 457 (Minn.2002).

## II.

Appellant asserts that the panel committed clear error when it affirmed the Director's conclusion that appellant violated Minn. R. Prof. Conduct Rules 1.3 and 1.4. Specifically, he argues that: (1) the panel misinterpreted the meaning of the "reasonable diligence" requirement of Rule 1.3; (2) the Director's findings and admonition went beyond the scope of the complaint; and (3) failure to provide a final written analysis to a client is not a violation of the

---

1. Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3. The comments to Rule 1.3 specifically state that, "A lawyer's workload should be controlled so that each matter can be handled adequately." Minn. R. Prof. Conduct 1.3 cmt. The comments state further that "unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." *Id.*

2. Rule 1.4 provides, "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 1.4. The comments to Rule 1.4 state, "The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation." Minn. R. Prof. Conduct 1.4 cmt.

communication principle of Rule 1.4.[3] In response, the Director contends that the panel did not clearly err when it affirmed the recommended findings and discipline because: (1) appellant's actions were inconsistent with the reasonable diligence requirement of Rule 1.3; (2) appellant failed to comply with the communication principle of Rule 1.4; and (3) appellant's failure to provide a final written analysis to the client under the circumstances violated Rule 1.4.

Appellant concedes that, after completing the draft analysis in August 2000, he took no further action on Z.S.'s case, did not inform her of his preliminary analysis, and did not attempt to contact Z.S. to notify her of his analysis until his May 13, 2002, letter to Z.S. indicating that there were difficulties with the case. Further, he does not contest the fact that he did not provide Z.S. a copy of his draft analysis of the case until February 2003.

In his defense, appellant asserts that his delay was reasonable because he believed there was no urgency to notify Z.S. of his progress on the matter because the statute of limitations was not going to run out for four years and because he believed that he had no obligation to attempt to locate Z.S. after the billings he had sent her were returned with no forwarding address. Appellant also asserts that there were mitigating circumstances that caused the delay in addressing Z.S.'s claim. In mitigation, appellant argues that an unexpected increase in his workload prevented him from working on Z.S.'s case and that he was concerned for his children who were traveling abroad during the initial stages of the 2003 Iraq war.

Rule 1.3 requires a lawyer to act with reasonable diligence in representing a client. Black's Law Dictionary defines "diligence" as "A continual effort to accomplish something." Black's Law Dictionary 488 (8th ed.2004). Rule 1.4 requires a lawyer to keep a client reasonably informed. Here, Z.S. paid appellant a $5,000 retainer on February 18, 2000. At the time, appellant believed that Z.S. had a viable malpractice claim. It took appellant approximately six months, until August of 2000, to prepare a more thorough analysis of the claim. That analysis raised serious doubts about the viability of the claim. That analysis was not finalized until March 2003 at the earliest, some 31 months after the preliminary draft was completed.

Appellant's argument that his conduct was reasonable under the circumstances is unavailing. A lawyer has an obligation to act for the benefit of the client. Delaying a determination of the viability of the client's claim because the statute of limitations is not presently going to expire provides no benefit to the client and may well be detrimental. If nothing else, it prevents the client from obtaining another opinion of the claim's merits from a different attorney. Moreover, to the extent that the claim is not viable, the delay prevents the client from moving forward with his or her life. Appellant's arguments in mitigation are also unavailing. An attorney's workload cannot mitigate the attorney's failure to act diligently in representing a client. As the comments to Rule 1.3 make clear, "A lawyer's workload should be controlled so that each matter can be handled adequately." Nor do we view appellant's concerns about his children as a mitigating factor. While we understand and appreciate these concerns, they do not provide a justification for ap-

---

**3.** Appellant also asserts that the panel's composition weighed against him and for that reason its conclusions should be disregarded. However, the panel was composed of one lawyer and two laypersons as permitted by Rule 4(e), RLPR.

pellant's delay in evaluating Z.S.'s case. We therefore conclude that appellant's representation of Z.S. was neither diligent nor reasonable.

■ We also conclude that appellant failed to keep Z.S. reasonably informed about the status of her case, in violation of Rule 1.4. As with appellant's failure to act with reasonable diligence in representing Z.S., the fact that the statute of limitations would not expire for over four years does not provide a basis for failing to inform Z.S. about the status of her case. Appellant's argument that his failure to contact Z.S. was reasonable because of his concerns about the expense of hiring a private investigator to locate Z.S. in Florida has no merit. Appellant had Z.S.'s current email address. Had he simply emailed Z.S., he would have been able to locate her immediately.

As Rules 1.3 and 1.4 indicate, a lawyer is required to "act with reasonable diligence * * * in representing a client" and to "keep the client reasonably informed about the matter." In this case, appellant failed to do either. A client in a case of this type should not have to wait more than 25 months to get a preliminary analysis from an attorney on the viability of a potential claim. Nor should the client have to wait just short of an additional 12 months to receive a final analysis. Having paid appellant a $5,000 retainer, Z.S. was entitled to and should have received a prompt assessment of her case. She did not. Thus, we conclude that appellant violated Rules 1.3 and 1.4, MRPC.

### III.

■ Having concluded that appellant violated Rules 1.3 and 1.4, MRPC, we next consider the appropriateness of the disciplinary sanction imposed. Appellant asserts that the panel's affirmance of the admonition issued by the Director was ar-

bitrary, capricious, and unreasonable because the issuance of an admonition in this case was excessive. In the alternative, appellant argues that an admonition is not appropriate because any violation of our professional conduct rules was de minimus.

Based upon our review of the facts in this case, we conclude that there is no basis upon which to conclude that the panel's affirmance of the Director's admonition was arbitrary, capricious, or unreasonable. In fact, we believe that on the facts presented it would not have been unreasonable for the Director to have recommended and the panel to have affirmed a more severe disciplinary sanction because, although the conduct giving rise to Z.S.'s complaint was isolated and not as serious as some misconduct, it was nonetheless serious. However, we are satisfied that the isolated nature of appellant's conduct counsels in favor of an admonition. Therefore, we affirm the admonition of appellant for his violation of Minn. R. Prof. Conduct Rules 1.3 and 1.4.

Affirmed.